## The State v. Kilgore, *Appellant.*

1. **Witness**: PRACTICE, CRIMINAL. It has never been determined by this court that the State is bound to call as witnesses upon a trial for murder, all persons who were present at the homicide; but if such be the law, it imposes no duty to call a person whose presence is denied by the State.

2. **Dying Declarations.** Statements of the victim of a homicide will be admissible as dying declarations, if, at the time they were made, he was conscious of impending death and had no hopes of recovery. A hope subsequently entertained will not affect their admissibility.

3. **Murder**: EVIDENCE OF IDENTITY. If the evidence given upon a trial for murder shows that the person killed bore the same name as that alleged in the indictment as the name of the victim, no other proof of identity need be given.

4. ———. Certain instructions in relation to murder are examined and construed, and held to conform to the settled rulings of this court.

5. **Murder by Lying in Wait.** Under an indictment for murder, the accused may be convicted on proof that he lay in wait and

killed the deceased, although the lying in wait is not alleged in the indictment.

An instruction in relation to this offense need not define the term "lying in wait."

6. **Good Character.** If all the evidence in the case, including defendant's evidence of good character, shows him to be guilty, his character cannot justify, excuse, palliate or mitigate the offense.

7. **Murder in the First Degree.** One who seeks out another and shoots and kills him on account of an old grudge and in retaliation, and not in the proper and necessary defense of his person, is guilty of murder in the first degree.

8. **Instructions:** IMPEACHING TESTIMONY: PRACTICE, CRIMINAL. The court is not bound, in a criminal case, to instruct the jury as to the proper effect of testimony offered to impeach defendant's witnesses, unless an instruction is asked by the defendant. (Distinguishing *State v. Branstetter*, 65 Mo. 149.)

9. **Instructions on a Murder Trial.** When the evidence admits of but two theories, one that defendant was guilty of deliberate murder, and the other that he took the life of the deceased in self-defense, the court is not authorized to instruct the jury in relation to manslaughter in any degree.

*Appeal from Audrain Circuit Court.*—HON. G. PORTER, Judge.

AFFIRMED.

*Forrist & Fry* for appellant.

1. It was the duty of the State to call as witnesses all who were eye-witnesses of the homicide. Mrs. Railey was, therefore, properly a witness for the State, and the State had no right to offer evidence to impeach her testimony. *State v. Wingo*, 66 Mo. 182; *State v. Foster*, 61 Mo. 553; *Comm. v. Drum*, 58 Pa. St. 9; *Maher v. People*, 10 Mich. 225; *State v. Underwood*, 57 Mo. 40; 1 Wharton Am. Crim. Law, (6 Ed.) § 592; Roscoe's Crim. Ev., (6 Am. Ed.) 1; *U. S. v. Gibert*, 2 Sumn. 19; *Porter v. State*, 1 Tex. Court of App. 394; *Regina v. Holden*, 8 C. & P. 609; *Hurd v. People*, 25 Mich. 405; Roscoe's Crim. Ev., 135; *Regina v. Chapman*, 8 C. & P. 559; Broom's Legal Maxims, 279;

*Rumsey v. Northeastern R. C.*, 14 C. B. N. S. 653 (78 E. C. L. R.); *Ames v. Waterlow*, L. R. 5 C. P. 55.

2. The statement of Willingham was not competent as a dying declaration. *State v. Simon*, 50 Mo. 373; *State v. McCanon*, 51 Mo. 161; *State v. Draper*, 65 Mo. 341; 2 Russell on Crimes, (5 Am. Ed.) 725, 760; *Smith v. State*, 9 Humph. 9; *Morgan v. State*, 31 Ind. 199; 1 Wharton Am. Law, (6 Ed.) § 671; *Rex v. Fagent*, 7 C. & P. 238; *R. v. Spilsbury*, 7 C. & P. 187.

3. The first instruction given on behalf of the State is erroneous, in that, it does not submit to the jury the question of identity of the deceased, as the party named in the indictment; it does permit the jury to find appellant guilty upon the preponderance of the evidence, and contains no legal definition of the terms used in the indictment; it is inconsistent with other instructions in the series, and ignores appellant's defense. 2 Russel, Crimes, (5 Am. Ed.) 795; 1 Whart. Am. Crim. Law, (6 Ed.) § 595, et seq. §§ 707, 744; *State v. Foster*, 61 Mo. 553; *State v. Lane*, 64 Mo. 319; *State v. Heed*, 57 Mo. 253; *Jackson v. Bowles*, 67 Mo. 609; *Crews v. Lackland*, 67 Mo. 619; *Seymour v. Seymour*, 67 Mo. 303; *State v. Williamson*, 16 Mo. 394; *Clark v. Hammerle*, 27 Mo. 55.

4. The second instruction is erroneous, in that it places deliberation and premeditation upon the same footing with malice to be "inferred from the circumstances connected with the killing," and is misleading and inconsistent with itself. *State v. Foster*, 61 Mo. 549; *State v. Lane*, 64 Mo. 319; *Seymour v. Seymour*, 67 Mo. 303.

5. The third instruction is erroneous, in that it directs the jury that if they shall find to exist the elements of a crime not charged in the indictment, they will convict the appellant under the indictment; and because it directly and in terms refers matters of law to the jury to-wit: if they shall find defendant was "lying in wait," and shall find while so lying in wait the defendant, with malice, willfully, with premeditation and deliberation, "as these

terms are known to the law," &c., they should convict, there being no definition given of "lying in wait," or how the other terms are known in the law.  1 Wag. Stat., p. 445, § 1; *Bower v. State,* 5 Mo. 379; *State v. Jones,* 20 Mo. 60; *Comm. v. Jones,* 1 Leigh 610; *State v. Arter,* 65 Mo. 654; *State v. Stone,* 68 Mo. 102; *Wyatt v. Citizens R. R. Co.,* 55 Mo. 485; *Wiser v. Chesly.* 53 Mo. 547; *Hudson v. St. L., K. C. & N. R. R.,* 53 Mo. 525; *State v. Heed,* 57 Mo. 254; *Mueller v. Putnam Ins. Co.,* 45 Mo. 84; *State v. Dunn,* 18 Mo. 423.

6.  The court erred in not instructing the jury that the testimony of the impeaching witnesses on part of State could only be received for the purpose or impeaching Mrs. Railey's statements, and could, under no circumstances, be received as evidence against the accused.  *State v. Swain,* 68 Mo. 615.

7.  It was the duty of the court to instruct the jury as to manslaughter because, under the indictment and evidence, they might have found defendant guilty of manslaughter in the second or fourth degree, if they found him guilty of any crime at all.  *State v. Branstetter,* 65 Mo. 154.

*J. L. Smith,* Attorney-General, and *J. McD. Trimble,* Prosecuting Attorney, for the State.

1.  The reasons which led to the establishment of the rule of the common law, that the State must call all the eye-witnesses of a homicide, have been removed by statute, and the rule itself, therefore, no longer exists in this State. At common law the defendant was not allowed the benefit of counsel in the presentation of his cause; he had no means of procuring the presence of witnesses in court, or of procuring their testimony, not being allowed subpœna for witnesses; and he was not allowed the right to testify in his own behalf.  It is true he was permitted to introduce and examine witnesses in his behalf, provided, such witnesses voluntarily came to court, but he could not compel their attendance   Hence it is obvious that the only

light· which the jury or the court could with certainty expect, as to the merits of the case upon trial, must come from the witnesses for the State.   In the interest of justice, therefore, the State was required to summon all who were present.  But these things have all been changed by statute. Aside from this, the State denied that Mrs. Railey was present.   *Wellar v. People,* 30 Mich. 16.   The fact that her name was on the indictment as one of the State's witnesses was no reason why the State should call her.   *Rex v. Simmonds,* 1 C. & P. 84; *Rex v. Harris,* 7 C. & P. 581.

2.   The third instruction is good.   The indictment charges a willful, deliberate and premeditated killing. This certainly includes a killing by lying in wait.   *State v. Green,* 66 Mo. 631 ; *State v. Pike,* 49 N. H. 399; *Riley v. State,* 9 Humph. 659 ; *Bratton v. State,* 10 Humph. 103. All the instructions are in harmony with the ruling of this court in similar cases.   *State v. Foster,* 61 Mo. 554; *State v. Underwood,* 57 Mo. 40 ; *State v. Starr,* 38 Mo. 270; *State v. Linney,* 52 Mo. 40.

3.   The statement of Willingham was competent as a dying declaration.   1 Greenl. Ev., §§ 156–160 ; Roscoe Crim. Ev., § 35.   If a declaration was competent when uttered, a subsequent hope of recovery will not render it incompetent.   *State v. Tilghman,* 11 Ired. (N. C.) 513 ; *Dunn v. State.* 2 Ark. 229 ; *Swisher v. Comm.,* 26 Gratt. 963.

HENRY, J.—The defendant was indicted for the murder of Lorenzo D. Willingham, and at the June term, 1879, of the Audrain circuit court, was tried, found guilty of murder in the first degree and sentenced accordingly. There is a great mass of testimony—that on the part of the State tending to prove the crime as alleged—that for the accused, a case of self-defense.   It is not necessary, in this opinion, to state the evidence, except so far as may be required in order to show the propriety of giving or refusing instructions, or admitting or excluding evidence.

The first objection to the action of the court, made by

the counsel for defendant, is that Mrs. Railey, whose name was indorsed upon the indictment as a witness for the State, and who, it is alleged, witnessed the homicide, was not called by the State, and when introduced by the defendant, the State was permitted to adduce evidence to impeach her testimony, by showing that she had previously made statements conflicting with those testified to by her. The proposition of counsel is, that it is the duty of the State to call all persons to testify who were present and witnessed the killing, and that all such are the State's witnesses, even though called by the defense. This question does not properly arise in this case, because it was denied that Mrs. Railey witnessed the homicide, and the evidence introduced by the State, in this connection, which is complained of, was introduced and tended to show that she was not present. If the rule contended for prevails here, it would only oblige the State to call those persons who were certainly present; but whether it obtains or not, has never been determined by this court' and the question is not now before us in a shape that requires its decision.

*1. WITNESS: practice, criminal.*

With regard to the dying declarations of Willingham, introduced by the State: Dr. Rodman testified that he examined the dead body and found that twenty-five shots had entered the face and chin of deceased; his front teeth were gone, his chin and his right arm broken; that either the wound in the face or the arm was necessarily fatal. From the wound in the face no one could say how long deceased could have lived; might have lived several days, but with both wounds could not have lived long. Chenowith testified that he saw deceased the day he was shot on the stiles in front of Kunkle's house. He seemed half asleep; was wounded about the neck; his right arm was shot off, chin broken, front teeth shot out, and bleeding fearfully from the arm. From other evidence it appears that after he was shot he walked to Kunkle's, between three and four hundred yards, and

*2. DYING DECLARATIONS.*

fell at the stiles, unable to proceed further. He said to Chenowith, "I am dying," asked witness who he was—witness told him, and he said, "O Lord, I am dying," and this he repeated several times. He died that afternoon, within three or four hours after he received the wounds. After deceased stated to Chenowith that he was dying, he was asked if a physician should be sent for: he said "yes," and after the physician was sent for deceased asked if he had come, and being told that he had not, said: "If he don't come soon, and if I don't get some relief, I cannot live long. I am freezing out here—take me to the fire." Chenowith also testified that he kept Willingham still, and did not let him talk much; that he had to wipe his mouth out occasionally to prevent him from being strangled with the blood from his wound. Chenowith was then asked what deceased, after saying that he was dying and could'nt live long, said as to the person who shot him: Defendant made objection, which was overruled, and the witness answered: "Immediately after deceased said 'I am dying—I can't live.' I asked him who shot him. He said 'Walker Kilgore.' I asked him, 'were you in a fight,' he said 'no, he shot me from the bush (or brush).'"

The general principle in relation to the admissibility of dying declarations, is, that they must be made when the party is conscious of impending death, and has no hope whatever that he will recover. The deceased was severely wounded. His right arm was almost shot off; twenty-five shot had entered his face; his front teeth were shot out; his chin was broken, and he had sunk down at the stiles in front of Kunkle's house, unable to proceed further from loss of blood, and the diminution of vitality, which such wounds may be presumed to have occasioned. The cir-cumstances authorized his belief, that he was at the point of death. There is nothing to warrant the suggestion, that his declaration that he would die, "was a mere expression of impatience, restlessness or great suffering." It was made when the chill of death was upon him. The facts

that he afterwards consented to send for a physician, and, on inquiry if he had come, stated that if he did not come soon, or if he did not get some relief soon, he could not live long, are relied upon as showing that he had some hope. We do not so interpret that language. It rather indicates that he had no hope, except of temporary relief. He did not say, "If the doctor don't come soon, or if I don't get relief soon, I'll die," and thus make his expectations of life or death, dependent upon the arrival of the physician or of relief. They indicate that he supposed it probable that the physician might give him a temporary respite. But if conceded that he then had hope, the statements do not show that he had hope when he told Chenowith he would die, and that defendant shot him from the bush or brush, and a hope subsequently entertained, does not affect its admissibility. The question is: "Did deceased at the time the declaration was made, believe that death was impending, and have no hope or expectations of recovery?" If the declarations were made under the sense of impending dissolution, and a consciousness of the awful occasion, the principle is not affected by the fact that the death did not ensue until a considerable time after the declarations were made. Swisher's Case, 26 Gratt. 970; 1 Whart. 67; 2 Russ. on Crimes 757; *State v. Tilghman*, 11 Ired. 513. The above remarks were made in a case where deceased lived ten days after receiving the wound of which he died.

It is also urged that the silence of deceased with regard to his estate or any disposition of it, to his mother, who lived with him, his funeral, sepulture, &c., is a circumstance which shows that he was not conscious that death was impending. The force of the argument is appreciated, but it is greatly weakened, if not wholly destroyed, by the facts that his chin was broken, his front teeth were shot away, his arm shot off and that he was in danger of being strangled by the blood flowing into his mouth from the wound, in consequence of which his friend

would not let' him talk much. He was evidently in no condition to talk, and the inference drawn from his silence by defendant's counsel is wholly unauthorized. We think that the court did not err in admitting the evidence of the declaration of the deceased, as a dying declaration.

The court gave all the instructions asked by defendant, but he complains of those given for the State, the first of which was as follows: "If the jury find from the evidence that in the month of January, 1879, at Audrain county, Missouri, the defendant, Walker Kilgore, willfully, deliberately, premeditatedly and of his malice aforethought, killed Lorenzo D. Willingham by shooting him with a gun, they will find defendant guilty of murder in the first degree. Willfully here used means intentionally not accidentally. Deliberately means in a cool state of the blood. Premeditatedly means thought of beforehand, any length of time, however short; if the defendant had time to think, and did think and then committed the act, such act is in law premeditated. Malice denotes a wrong act done intentionally; it signifies such a state of disposition as shows a heart regardless of social duty, and fatally bent on mischief." It declares that "if the jury believe from the evidence, &c., they will find, &c.," and therefore, counsel say, it authorized the jury to find a verdict against the accused, on a mere preponderance of the evidence; but there was an instruction given applying to the whole case, and to every possible theory of the case, declaring, that if the jury had a reasonable doubt, as to the guilt of the accused, they should acquit him.

It is also urged that it "leaves out and entirely overlooks a material and vital fact, to wit: the identity of the 3. MURDER: evi- person charged to have been killed." In dence of identity. other words, that it authorized a verdict of guilty "if the jury found that defendant killed Lorenzo D. Willingham, whether indicted therefor, or not." This point is too fine to be clearly apprehended. Defendant was indicted for killing Lorenzo D. Willingham, it was

proved that he killed Lorenzo D. Willingham, and no other evidence was required to show that the Lorenzo D. Willingham killed, was the same Lorenzo D. Willingham for whose murder defendant was indicted.

Another objection to the instruction is that the terms, malice, deliberation, premeditation, and willful, were not t. ——. defined correctly or intelligently, and that in defining premeditation, the instruction leaves out. the intent and purpose to kill; and quoting the language of the instruction: "Premeditation means thought of beforehand, any length of time however short; if the defendant had time to think and did think, and then committed the act, such act is in law premeditated;" counsel ask "think of what?" We answer, the act with which he is charged. It was but the definition of a term used in the indictment, and no reference to the act charged was necessary The definition of the other terms are such as have been repeatedly approved by this court.

The second instruction was as follows: The willfulness, deliberation, and premeditation and malice aforethought, as above defined, necessary to constitute "murder in the first degree," may be inferred from the circumstances connected with the killing, and if they existed a moment before the killing, it is sufficient, if shown to exist in the case, beyond a reasonable doubt." Defendant complains that this instruction places deliberation and premeditation upon the same basis with willfulness and malice, so far as the inference, or the presumption, of their existence is concerned. It does not follow because malice may be inferred from the circumstances of the killing, that deliberation and premeditation may not be also inferred from them. Counsel assume that the word "inferred," used in the instructions, is to be understood in the exact sense of "presumed," and that deliberation and premeditation are never presumed. "Inferred" and "presumed" are not, synonymous, and what authority they have for saying that "inferred" was employed in the instruction in the exact

sense of " presumed," I do not know. Nothing in that or
any other instruction shows it to have been used in any
such sense. There is no weight in the other objection
made to that instruction.

We pass to the third, which, it is said, defines crimes
not found in the indictment, and directs the jury to con-
5. MURDER BY LY- vict, if they find defendant guilty of such
ING IN WAIT      crimes. It is as follows: If the jury believe
from the evidence that the defendant, Walker Kilgore, was
lying in wait for and intercepted the deceased, Lorenzo D.
Willingham, on the day he was killed, and for the pur-
pose of killing him or doing him some great bodily harm,
and that he, defendant, while there lying in wait for said
Willingham, willfully, deliberately, premeditatedly, and of
his malice aforethought, (as these terms are well known to
the law,) shot and killed said Willingham as he was pass-
ing along a public road, then the jury will find the de-
fendant guilty of murder in the first degree, and in such
cases it makes no difference who made the assault." Under
an indictment for murder, the accused may be convicted
on proof that he lay in wait, and killed the deceased, al-
though the lying in wait is not alleged in the indictment.
*State v. Green*, 66 Mo. 631. If the homicide be proved, the
lying in wait is evidence of deliberation and premeditation.
Murder by lying in wait may be committed with fire-arms,
knives, daggers, or other instruments. The case of mur-
der by poison is different; that is a specific means of tak-
ing life. Lying in wait, of itself, does not kill. It is not
a means of taking life. It is but a posture of one who
does take life by means with which death is produced. It
is not, therefore, necessary to allege the lying in wait
which is but evidence tending to prove the material alle-
gations of deliberation and premeditation.

Nor do we think the instruction ill because the phrase,
"lying in wait," was not explained to the jury. It is in
some sense a technical phrase, but has no meaning in law
different from that attached to it in common use. It would

be difficult, we apprehend, to find a man of any intelligence who would have to be told the meaning of lying in wait in connection with a homicide.

The ninth instruction for the State read as follows: "If the jury believe from the evidence, and beyond a reasonable doubt, that the defendant shot and killed the

6. GOOD CHARACTER. deceased as charged in the indictment, then the previous and present good character of the defendant alone and of itself cannot justify, excuse, palliate or mitigate the offense." Defendant complains that by this instruction, evidence of his good character was excluded from the consideration of the jury in determining his guilt or innocence. This, we think, a misconstruction of the instruction. It simply declares that if the jury believe from the evidence (that of his good character included) that defendant was guilty, then his previous good character could not justify, excuse, palliate or mitigate the offense; and an instruction for defendant expressly declared that, in determining his guilt or innocence, the evidence of his good character should be considered by the jury. There is no conflict between these, and this matter was fairly submitted to the jury.

The instruction which presents the greatest difficulty is the eighth of those given for the State. "If the jury

7. MURDER IN THE FIRST DEGREE. believe from all the facts and circumstances in evidence, and beyond a reasonable doubt, that the defendant, Kilgore, sought the deceased, Willingham, and shot and killed him on account of an old grudge he entertained against him, and in retaliation or revenge therefor, and not in the proper and necessary defense of his person, they will find the defendant guilty of murder in the first degree." It was wholly unnecessary to give that instruction, its constituent elements having been fully embraced in the first, and it is a hazardous experiment, in these cases, to travel out of the beaten ways. This instruction is on the very verge of error. The argument, however, that it declares that from certain facts, the law

presumes deliberation and premeditation, is not sound, but only plausible. The law, it is true, never, from any state of facts, presumes either deliberation or premeditation. These are operations of the mind; yet, if the instruction requires them to be found by the jury, although those precise words are not employed, it is sufficient    This instruction predicates guilt of the following facts:    1st, That defendant had a feeling of enmity against the deceased; 2nd, That he sought him; 3rd, That he sought him in order to kill him; 4th, That he sought him to kill him in order to gratify a desire of revenge, and, 5th, Did kill him.    Here are all the elements of murder of the first degree.    Malice, in the enmity and desire of revenge; willfulness, in the intentional killing, and deliberation and premeditation, in the seeking of Willingham for the purpose of taking his life.    The instruction was not erroneous, but trial courts had better adhere to precedents, long and well established, when they will answer, than venture upon formulas which have not passed through the ordeal of judicial criticism.

The witnesses for the State offered to contradict Mrs. Railey, testified to certain statements made by her, in con-
8. INSTRUCTIONS: flict with her evidence, substantially to the impeaching testimony: practice, effect, that she did not see the difficulty, but criminal. heard the shots, and soon after defendant came to the house with a shot gun in his hand and said he had killed Willingham.    The defendant's counsel now contend, although they asked no instruction on the subject, that it was the duty of the court, of its own motion, to instruct the jury, that these declarations of Mrs. Railey were only admissible for the purpose of impeachment, and were not to be regarded by them as evidence for any other purpose.    In the *State v. Branstetter*, 65 Mo. 149, it was held to be the duty of the court to declare the law applicable to every crime, or grade of crime, of which, under the evidence, the jury might convict the accused.    As to collateral matters, it is for the respective parties to ask

such instructions as they may be entitled to. In the Swain Case, 68 Mo. 616, a proper instruction on the impeaching evidence was asked and refused. If it had been asked, in this case, it should have been given, or if one, objectionable in its phraseology had been asked and refused the court should have given a proper instruction on the subject; but the Branstetter case carries the doctrine far enough, and it cannot be extended without serious detriment to the administration of the criminal law. The Swain case is not an authority for the position that it is the duty of the court, of its own motion, when no instruction is asked, to give one with regard to the impeaching statements.

Objections are made to other instructions, but without noticing them in detail, we are satisfied after carefully considering them that the law was correctly declared to the jury, and that the instructions were as favorable to the accused as the circumstances would warrant.

The evidence admits of but two theories, one, that the defendant was guilty of deliberately murdering the deceased, the other, that he took his life in defense of his own. Therefore, the court was not authorized to instruct the jury in relation to manslaughter in any degree. A jury of his county, who, it is to be presumed, had no prejudice against the defendant, have, on the evidence found him guilty of murder in the first degree, and there is nothing in this record which would justify us in interfering to arrest the execution of the sentence. All concurring, the judgment is affirmed.

9. INSTRUCTIONS ON A MURDER TRIAL.