THE STATE v. MEYERS, *Appellant.*

1. **Practice, Criminal**: OBJECTION TO SUFFICIENCY OF INDICTMENT. Objection to the sufficiency of an indictment cannot be taken by objecting *ore tenus* to the introduction of evidence.

2. ———. No assignment of error or joinder in error is necessary in criminal cases. The statute requires the appellate court, in the absence of assignment or joinder in error, to proceed and render judgment upon the record before it. (R. S. 1879, sec. 1993.)

3. ———. A material defect in an indictment, which is available on motion in arrest, is equally available in the appellate court on appeal or writ of error.

4. **Criminal Law**: MURDER: INDICTMENT. An indictment in the usual form, charging murder to have been done deliberately and premeditatedly, is sufficient under the statute to charge murder in the first degree, regardless of whether the murder was committed in the perpetration of a felony or otherwise.

5. ——— : ——— : ———. The perpetration or attempt to perpetrate any of the felonies mentioned in the statute (R. S. 1879, sec. 1232), during which perpetration or attempt a homicide is committed, stands in lieu of and is the legal equivalent of that premeditation and deliberation which otherwise are the necessary attributes of murder in the first degree.

6. ——— : ——— : ———. In such case it is only necessary to make the charge in the ordinary way for murder in the first degree, and show the facts in evidence, and if they establish that the homicide was committed in the perpetration or attempt to perpetrate any of the felonies mentioned in the statute, this will be sufficient.

The State v. Meyers.

99 107
f156 84
99 107
158 122
158 603
158 612
159 102
159 129
86a 540
99 107
161 491
99 107
162 316
163 244
99 107
164 530
99 107
165 357
166 238
167 370
99 107
e168 7428
99 107
170 8214
170 14672
171 3 28
171 3 51
171 7 54
e172 8266
e97a 8606
97a 8607
97a 7608
99a11 37
99 107
102a 7682
99 107
178 1 56

7. ———— : INDICTMENT : SURPLUSAGE. A portion of an indictment may be stricken out as surplusage, if, after this be done, enough be left to make a valid and substantial charge of the crime intended to be charged.

8. ———— : ———— : CONCLUSION. The conclusion of a count of an indictment for murder is just as essential as other portions of the count. The conclusion "and so said M. in manner and form, etc., * * * did feloniously, wilfully, deliberately, etc., kill and murder, etc.," is insufficient to charge murder. The concluding charge in such case should be by the grand jurors upon their oaths, otherwise the previous words of the indictment will charge only manslaughter.

9. ———— : MURDER : SUFFICIENCY OF VERDICT. On a trial for murder the verdict "We, the jury, find the defendant guilty of murder in the first degree, as charged in the second count of the indictment," is in strict conformity to the requirements of Revised Statutes, 1879, section 1234, in that it ascertains as a fact the degree of murder of which the defendant was guilty.

10. ———— : PRACTICE : EXCEPTIONS. Where exceptions were not saved to the giving or refusing of instructions at the time of the ruling, it is too late to raise the point in the motion for new trial.

11. ———— : ———— : ————. Exceptions in criminal causes occupy the same position that they do in civil actions.

12. ———— : ———— : CONFESSIONS. A confession is presumed to be voluntary unless the contrary is shown, or something appears in the confession or its attendant circumstances to combat such presumption.

13. ———— : ———— : PLEA OF GUILTY : EVIDENCE. A plea of guilty offered by a defendant charged with murder, but refused by the court, cannot be given in evidence against him on trial.

14. Practice : OBJECTION TO EVIDENCE. The general objection that evidence is incompetent, immaterial, etc., is bad where the evidence objected to is in any way competent to establish the contention of one of the adverse parties, but, where it is wholly inadmissible for any purpose, it does not come within the rule requiring special objections to it to be made.

15. ———— : EXPERT TESTIMONY : OPINION OF PHYSICIAN. Physicians may be examined as to the nature and effect of disease, the effect of particular poisons upon the human system, and the effect of particular treatment of insanity, and generally as to insanity in its various indications and manifestations, provided the questions asked them are pertinent and relevant to the points presented by testimony previously adduced.

*Appeal from Jackson Criminal Court.*—Hon. Henry P. White, Judge.

Reversed and remanded.

*F. M. Lowe* for appellant.

(1) The jury was separated during the trial of the cause, and, for this reason, the cause should be reversed. *State v. Murray*, 91 Mo. 95; *State v. Collins*, 81 Mo. 652, and R. S. 1879, sec. 1909. (2) The court erred in refusing to give the instruction asked by defendant taken from the case of *State v. Pagels*, 92 Mo. 300, and also instruction asked by defendant to the effect that insanity once proven is presumed to continue. *State v. Lowe*, 93 Mo. 570.

*John M. Wood*, Attorney General, for the State.

(1) Objections to the sufficiency of an indictment cannot be taken by objecting *ore tenus* to the introduction of evidence. *State v. Risley*, 72 Mo. 609. The indictment need not charge that the jurors were empanelled, sworn or charged. *State v. Vincent*, 91 Mo. 662. The charge in the second count that the wound was inflicted with a certain iron weapon and means, which they, the said Charles Meyers and John Bogard, then and there had and held in their hands, was sufficient. *State v. Dalton*, 27 Mo. 14; *State v. Blan*, 69 Mo. 317. The second count in the indictment in other respects correctly charges the offense of murder in the first degree, committed in the attempt, and in execution of said attempt, to rob. Laws, 1885, p. 138; *State v. Hopkirk*, 84 Mo. 278. (2) The objection to the state introducing witnesses whose names were not endorsed on the indictment is without merit. *State v. Pagels*, 92 Mo. 300. (3) The declarations of defendant and his confederate,

the night of and just prior to the murder, was admissible to prove that they had no money, as a circumstance in proof of the motive of defendant, and tending to establish the charge in the second count in the indictment. Whar. Crim. Ev. [9 Ed.] sec. 24, and note. (4) The order of the admission of testimony is in the discretion of the trial court. *State v. Linney*, 52 Mo. 40. There was, therefore, no error committed in overruling defendant's objection to the state recalling and re-examining witness Ross. (5) Had the testimony of witness Bert Girard, objected to (rec. 191), been inadmissible, it established nothing to the prejudice of defendant, and would not constitute grounds for a reversal. (6) The confession of defendant was not induced or extorted by means of any promises or threats, or other influences calculated to excite his hopes or his fears. The evidence of the confession was properly admitted. *State v. Hopkirk*, 84 Mo. 278; Whar. Crim. Ev. [9 Ed.] secs. 672, 673; Green. Ev., sec. 223; 1 Roscoe's Crim. Ev., p. 68. (7) It was competent to prove the statement of defendant that he was guilty, made at a previous term of court when the indictment was read over to him, as testified to by witnesses Ward and McClannahan. Whether it be considered as judicial or an extra-judicial confession, it was a voluntary confession of guilt, and admissible. *State v. Briggs*, 27 N. W. Rep. 358; *State v. Rice*, 22 Tex. App. 654; *State v. Giles*, 23 Tex. App. 281; *United States v. Kirkwood*, 13 Pac. Rep. 234; *State v. Lamb*, 28 Mo. 218; *State v. German*, 54 Mo. 526; Roscoe's Crim. Ev. *40; Whar. Crim. Ev. [9 Ed.] secs. 664, 667; Green. Ev., secs. 216, 227; 1 Bish. Crim. Proc., sec. 1255. (8) Questions when asked an expert should be stated hypothetically, embracing the facts testified to on the trial, upon which his opinion is required. When the facts are doubtful or disputed, it is improper to ask an expert, who has heard the evidence, what his opinion is upon the case on trial. The questions asked

Dr. Punton were incomplete, and otherwise objectionable in form. *State v. Klinger*, 46 Mo. 224; Green Ev., secs. 440; Whar. Crim. Ev. [9 Ed.] sec. 4180; 1 Roscoe's Crim. Ev., p. 2240. And the same can be said of questions asked Dr. Field. (9) Persons who are not experts are permitted to give their opinions based upon their observation of, and association with, the person alleged to be insane. See authorities, *supra*. The evidence of witness Chadburn objected to was, therefore, admissible. (10) Defendant saved no exceptions during the progress of the trial to the giving or refusal of the instructions, and they are not now subject to review. *State v. McDonald*, 85 Mo. 539, and authorities cited.

SHERWOOD, J.—The second count of the indictment, upon which the defendant was tried, convicted and sentenced, reads this way: "And the grand jurors aforesaid, upon their oaths aforesaid, do further present and say, that Charles Meyers and John Bogard, on the third day of January, 1888, at the county of Jackson and state aforesaid, did feloniously, wilfully, deliberately, premeditatedly, and of their malice aforethought, make an assault upon James Weir (intending and attempting then and there the money and property of said James Weir, from the person and against the will of said James Weir, and by force and violence to the person of said James Weir, then and there to feloniously rob, steal, take and carry away), and did then and there (while so intending and attempting, and in execution of such intent and attempt) feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, with a certain iron weapon and means, an exact description whereof is to these jurors unknown, which they, the said Charles Meyers and John Bogard, then and there had and held in their hands, strike and beat him, the said James Weir, thereby giving to him, the said James

Weir, in and upon the head of him, the said James Weir, certain mortal bruises, wounds, contusions and fractures, of which said mortal bruises, wounds, contusions and fractures, the said James Weir, then and there, thence continually languished until the tenth day of January, 1888, he there died. And, so said Charles Meyers and John Bogard, in manner and form aforesaid, and by the means aforesaid, did feloniously, wilfully, deliberately, premeditatedly, and of their malice aforethought kill and murder the said James Weir, against the peace and dignity of the state.''

"BLAKE L. WOODSON, Prosecuting Attorney."

I. It seems that the counsel for the defendant objected *ore tenus* to the introduction of any evidence, because of the insufficiency of the indictment, but such a method of objection avails nothing. *State v. Risley*, 72 Mo. 609.

In the motion in arrest, however, it is stated : "That the second count in the indictment, upon which the verdict was found, *does not state facts to constitute a cause of action.*" It is unnecessary to inquire whether such a general objection is good or not, by reason of the fact that, in criminal prosecutions, no assignment of error or rejoinder in error is necessary; and by reason of the fact that our statutory duty requires that in the absence of such assignment of error we proceed and render judgment upon the record before us. R. S. 1879, sec. 1993; *State v. Barnett*, 63 Mo. 300; *State v. Krieger*, 68 Mo. 98; *State v. Davidson*, 73 Mo. 428. And such general objection, if insufficient, is also healed by the further consideration that, if the defect in the indictment be a material one, one available on motion in arrest, it is equally available in this court on appeal or error. *McGee v. State*, 8 Mo. 495.

II. An indictment in the usual form, charging the murder to have been done deliberately, premeditatedly, etc., is sufficient, under our statute, to charge murder in

the first degree, no matter whether the murder be committed in the perpetration of robbery, rape, etc., or otherwise. *State v. Hopkirk*, 84 Mo. 278; *State v. Kilgore*, 70 Mo. 546; *State v. Green*, 66 Mo. 631. The perpetration or the attempt to perpetrate any of the felonies mentioned in the statute, during which attempt, etc., the homicide is committed, stands in lieu of, and is the legal equivalent of, that premeditation, deliberation, etc., which otherwise are the necessary attributes of murder in the first degree. The correctness of this view is recognized in Pennsylvania, from which statute section 1232 is derived. *Commonwealth v. Flanagan*, 7 W. & S. 415. See, to same effect, *Titus v. State*, 49 N. J. L. 36.

The rule was the same at common law ; it was not necessary to charge that the murder was committed in the perpetration of another crime; it sufficed to charge it in common form, and then, upon proof that the crime was done in the perpetration, etc., this answered the ends of the prosecution and stood in the stead of proof of " malice aforethought." 2 Bishop's Crim. L., sec. 694; Foster's C. L. 258, *et seq.;* 1 Hale's P. C. 465.

As will have been observed, in the present case, the pleader has evidently endeavored to draw an indictment based upon the allegation of facts occurring in the perpetration of a robbery, and resulting in the crime of murder. I have never met with but one precedent, where the endeavor was made to charge a murder committed in the attempt to perpetrate another felony, and, in that case, the endeavor failed. *Titus v. State*, 49 N. J. L. 36. As before seen, it is wholly unnecessary to do more when murder is committed in the perpetration, etc., than to make the charge in the ordinary way for murder in the first degree, and then show the facts in evidence, and, if they establish that the homicide was committed in the attempt, etc., this suffices.

It is immaterial, in the case at bar, to determine whether the pleader has succeeded in the indictment before us, because, if you strike out that portion of the indictment which I have marked in brackets, there will be sufficient left to form the body of a good charge of the crime, so far as concerns that portion of the count. The authorities abundantly sustain the position that, if after striking out a portion of an indictment, enough be left to make a valid and substantial charge of the crime intended to be charged, no essential part of the case being omitted after the striking out occurs, then such striking out is admissible. Whart. Crim. Pl. & Pr., sec. 158. Treating of this topic, that redoubtable old warrior of criminal jurisprudence, Chitty, says: "But though the indictment must, in all respects, be certain, yet the introduction of averments, although superfluous and immaterial, will seldom prejudice. For if the indictment can be supported without the words which are bad, they may, on arrest of judgment, be rejected as surplusage." 1 Chitty's Crim. L. 173; *Ib.*, 231, 233, 238. Elsewhere he says: "It is a general rule, which runs through the whole criminal law, that it is sufficient to prove so much of the indictment as shows the defendant has committed a substantive crime therein specified; and, in the case of redundant allegations, it is sufficient to prove part of what is alleged, according to its legal effect, provided that that which is alleged, but not proved, be neither essential to the charge, nor describe or limit that which is essential." *Ib.* 250. To the same effect, see *The King v. Morris*, 1 Leach, 127; *The King v. Redman*, 2 Leach, 536. That portion of the count must therefore be ruled not obnoxious to criticism, after striking out the portion of it mentioned, or, what amounts to the same thing, treating it as surplusage.

III. The conclusion of the count remains to be discussed. Is it sufficient in law? Precedents are very good witnesses of what the law is. Going back to the time of

Coke, his form for the conclusion of an indictment for murder is: "*Et sic juratores præd' dic' super sacram' suum quod prædictus Jacobus Heydon modo et forma prædictis prædictum Edwardum Savage felonice et ex malitia sua præcogitata interfecit et murdravit contra pacem dictae Dominae Reginae Coronam et dignitatem suam.*" *Heydon's Case*, 4 Co. 41*b*. The form, being translated, is the same in Chitty. 3 Chitty's Cr. L. 750. Wharton uses the same form. Whart. Hom., sec. 849. Bishop, also, 2 Cr. Proc., secs. 536, 541, 548, 564. And the same form of a conclusion is to be found in 4 Black. Com. (Cooley's Ed.) Append. 478, as well as in 3 Burns' Justice, 822.

A very careful examination of the old forms and precedents has failed to discover a single instance where a form of the conclusion in a count for murder has been like that used in the present record. Instances, after close investigation, have been found where allusions are made to the conclusion of a count for murder, and to the *substance* or *effect* of such conclusion. 1 East P. C., ch. 5, sec. 117, p. 347; *Wingfield's Case*, Cro. Eliz. 739; 2 Hawk., ch. 25, sec. 57; *Ib.*, ch. 23, sec. 791; Hale P. C. 427; 2 *Ib.* 187, 188. But in none of those instances is the *form* for the conclusion of a count for murder given, and, indeed, the last authority cited refers to *Heydon's case, supra,* where I have quoted the form given by Coke. So that Hale evidently approves that form. All the authorities show the proper conclusion of an indictment for murder marks the feature of that offense which distinguishes it from manslaughter. Without such conclusion, the previous words charge but the latter offense. 2 Bish. Crim. Proc., secs. 536, 548, 550; 3 Chitty's Crim. Law, 737; *Ib.* 243. Hence the importance of the conclusion in the count for murder. That conclusion, in order to be valid, charges murder as the result of the previously made allegations. 3 Chit. 738.

Of course, if a crime is to be charged, it must be done by the *grand jurors* upon their oaths. It does not appear that the *grand jurors* have charged murder in the conclusion before us. We have, it is true, a very liberal statute concerning indictments, etc.; section 1821, among other things, declaring that "no indictment shall be deemed invalid for an omission to allege that the grand jurors were empanelled, sworn or charged," etc.; but it will be noticed that this section, broad as it is, does not profess to cure an omission where the grand jury *fail to make a charge of a crime committed.* And, as previously seen, the conclusion of a count for murder is just as essential as the other portions of the count. Nor is it thought that the other language, employed in the section referred to, cures the defect mentioned. *State v. Pemberton,* 30 Mo. 376. Our bill of rights declares that: "In criminal prosecutions, the accused shall have the right to * * * demand the nature and cause of the accusation." Const., art. 2., sec. 22.

And an indictment means just what it did at common law. *Ex parte Slater,* 72 Mo. 102. The legislature may change it in form, but cannot change the substance of its material averments, without impinging upon constitutional guarantees. Hawkins says: *"That in an indictment nothing material shall be taken by intendment or implication."* 2 Hawk., ch. 25, sec. 61. This salutary doctrine, if ever applied, should be applied in indictments for capital crimes. In consideration of the authorities and the reasons to be deduced from them, it must be ruled that the conclusion of the aforesaid count is insufficient in law, and without precedent to support it.

IV. Another ground mentioned in the motion in arrest is "that the verdict is not sufficient to sustain the judgment." The verdict returned is as follows : " We, the jury, find the defendant guilty of murder in the first degree, as charged in the second count in the indictment."

There is no merit in the objection. The verdict is in strict conformity to section 1234, Revised Statues, 1879, in that it "ascertains" *as a fact*, just as the statute intended, the degree of murder of which the defendant was guilty, and in this particular differs radically from the verdicts in the cases of *State v. Montgomery*, 98 Mo. 399, and *State v. Jackson, ante*, p. 60.

V. Regarding the instructions, as no exceptions were saved to the giving or refusing of them *when* given or refused, it was too late to raise the point in the motion for a new trial. *State v. McDonald*, 85 Mo. 539, and cas. cit. Exceptions in criminal causes occupy the same position as do those in civil actions. R. S., sec. 1921; *State v. Griffin*, 98 Mo. 672, and cas. cit.

VI. The substance of the confession, made by defendant to Leveene, is the following: " He said that his home was in Altoona, Pennsylvania; his parents lived there, and were respectable, and that his father was working in the car-shops. That he drifted West and went to Fort Leavenworth, and engaged himself as a member of the band; he was discharged from there for some reason or other, and came to Kansas City; he had no place to stop, and he drifted to the basement of the Delmonico hotel, and there he first met John Bogard; they exchanged experiences; both were looking for work, and Bogard suggested that they go around the city next day and try and find something to do; this was about the twenty-ninth or thirtieth of December, 1887; they started around the city the next day, but, being unable to get work, Bogard said he was acquainted in Independence, and that they might get work there; they started out and walked there, and when they arrived, being tired and hungry, they first looked around for something to eat, and a lady gave them something; after that they went to the room of the Y. M. C. A. and staid there awhile; then they went around town and drifted to the Liberty street depot, sat

there awhile and then went over to the electric light
works to get warm; remained there awhile and talked
to the fireman or engineer, then went again to the
depot; the second time they went there, Bogard
remained, and he went back to the works to get warm;
about half-past ten or eleven o'clock he returned to the
depot, and he and Bogard then went over to the works
and asked the fireman to let them sleep there, and he
complied; they stayed there until about two o'clock,
when the fires were put out and it got very cold, and
they got out and went to the depot; when they came
back to the depot there was no one in there but this man,
James Weir, tilting back on a chair, sleeping; they
remained in there awhile, talking about what they should
do, and not knowing what to do, Bogard said : ' There is
a man sitting over there, who has got plenty of money;
Meyers asked him how he knew; Bogard said he saw
him have the money; Meyers asked him what about it ? ·
Bogard said : ' Let's hold him up and get the money
away from him;' Meyers said he objected to it, and
Bogard said : 'If you don't do it, I will take it from
him;' they then went out on the platform and talked it
over there; they then got to talking about the method
they should employ; they hadn't anything to do it with.
* * * Bogard said : ' I'll get something for you, and
he went out to the rear of a train and pulled a coupling
pin, and handed it to Meyers and told him to hit him on
the head with it, only to stun him, not to kill him, and
while he was in that condition he would take the money
away; Meyers refused to do it, and Bogard said : 'You
are a God-damned coward; if you don't do it, I will:'
Meyers said he didn't like to be called a coward; that
Bogard called him a coward and ' agged' him on, and
in a frenzied state of mind,—his mind was unsettled,—
he said, he approached Weir and hit him two blows on
the head; that brought him on the floor; then Bogard
went through his pockets and drew out the money;

they then rushed over to the electric light building, and when he asked Bogard to divide the money, he gave him the silver and kept the bills ; they walked about town and stayed there until morning; Bogard said they had better separate, that they had better not be seen together that morning; he advised Meyers to leave town, to take the train to Kansas City, and go back to Topeka, which he did, and from there went on to Fort Leavenworth, where he joined the troops."

Similar confessions were made to others, and there was ample other evidence to corroborate the extra-judicial confessions, to identify the defendant, and to establish his proximity to the scene of the crime on the night of its commission, etc. The evidence abundantly sustains the conviction, and the evidence of the confessions was properly received. And there was nothing in the nature of those confessions, or the way in which they were made, that ought to have rendered them inadmissible. A confession is presumed to be voluntary unless the contrary is shown, or appearing in the confession or its attendant circumstances, to combat such presumption. *State v. Patterson*, 73 Mo. 695; *State v. Hopkirk*, 84 Mo. 278.

VII. At a previous term of the court, the defendant had been called before the court, the indictment read to him, and he then pleaded guilty ; this plea the court very properly refused to receive, and it was not entered of record. At the time the trial occurred, the prosecution was permitted, over the objection of the defendant's counsel, to introduce the deputy clerk and others to prove the facts, that the indictment had been read to the defendant, and that he had pleaded guilty thereto. Such testimony should not have been admitted. The confession being what is termed "a plenary judicial confession," that is a confession made before a tribunal competent to try him, was sufficient whereon to found a conviction. 1 Roscoe's Crim. Ev.

[8 Ed.] 40. Consequently, the trial court might have proceeded at once to pass sentence upon the accused.

But this fact surely did not authorize the reception of the plea of guilty in evidence, after the court had refused to receive that plea, and had placed the defendant upon his trial. No one would contend that, if the plea of guilty had been entered of record, such plea could have been received in evidence against the defendant, and yet the same principle is involved whether the plea actually go upon record or not ; in either case, it must, if received in evidence, be *conclusive* of the defendant's guilt. Like the previous question in parliamentary bodies, evidence of such a plea, having been made before a tribunal competent to try the party making it, cuts off debate and determines all issues. The course therefore pursued by the trial court, in this regard, was plainly inconsistent ; the plea of the defendant should either have been received, and sentence passed accordingly, or that plea should never have been heard of again.

By refusing to receive the plea and granting the defendant a trial, this of necessity meant *a trial* with the issues of fact to be determined by the jury, and not to be determined by the previous plea of the defendant, which admitted all that the state desired to prove. In short, the trial court could not refuse to receive the defendant's plea of guilty at one time, and then use it against him at another. The cases cited by the state, and many others, have been examined, but none have been found to sanction the introduction of such evidence. Nor can the error of the reception of such evidence be healed or glozed by reason of the general objection made to its introduction, that it was "incompetent, immaterial," etc. Such objections are obviously bad where the evidence is competent in any way or manner to establish the contention of one of the adverse parties ; but here the evidence was wholly inadmissible

in whatever shape offered, and, therefore, does not fall within the rule requiring special objections to be made.

VIII. Depositions of the physicians had been taken at the home of defendant in Altoona; they had treated the defendant professionally for disease resulting from masturbation, and their testimony tended to establish that his mind had been seriously impaired, if indeed he had not been rendered insane by the practice of that vice. One of them testified that in his opinion "*his mind was entirely gone*," and the other that "*he was a mental wreck.*" There was much other testimony of non-experts to the same effect, tending to show either an insane mind or one very closely bordering on insanity.

Upon the basis thus established, it was proposed to prove by experts who were in attendance, and who had read or heard the depositions read, wnat was the mental condition of one who had become insane in consequence of the habit contracted by the defendant, whether such insanity was permanent in its character, easily cured or hard to cure. Defendant's counsel, the proper basis having been laid in the depositions aforesaid, proposed to ask one of the experts the question whether a person, who was insane from the cause mentioned one year before that, would remain insane down to the time of the trial. This question was also rejected. It is true experts may be required to give their opinions upon a hypothetical case, a case substantially similar to that shown by the testimony in the given case, but this is by no means the extent to which they may be examined. The authorities abundantly show that physicians may be examined as to the nature and effect of disease ; the effects of particular poisons upon the human system ; the effect of particular treatment, and generally as to insanity in its various indications and manifestations. 1 Whart. Ev. [3 Ed.] sec. 441 ; 1 Greenl. Ev. [14 Ed.] sec. 440 ; Whart. Crim. Ev. [9 Ed.] secs. 412, 417, 418.

These remarks are of course subject to the conditions that the questions asked the physician are pertinent and relevant to the points presented by the testimony previously adduced. In the case at bar, the relevancy of the questions was apparently within the rule above stated, and should have been answered by the witnesses.

There are various other errors assigned, some of which were not properly preserved; others in which there is no merit, and still others as to which it is unnecessary to express an opinion owing to the disposition made of this cause; but for the errors aforesaid, the judgment will be reversed and the cause remanded. All concur but BARCLAY, J., who defers an expression of opinion. BARCLAY, J., concurs in the result.