## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

May 2, 1924.

## THE PEOPLE v. LOUIS STEINMETZ.

(209 App. Div. 83.)

EVIDENCE—DEFENDANT MAY BE ASKED ON CROSS-EXAMINATION IF HE PLEADED GUILTY ON ARRAIGNMENT.

In a criminal prosecution the defendant who takes the stand in his own behalf may be asked on cross-examination if he pleaded guilty to the indictment when arraigned though that plea was subsequently withdrawn and the plea of not guilty made. The evidence is admissible, if for no other reason, on the ground that it shows contradictory statements made by the defendant.

APPEAL by the defendant, Louis Steinmetz, from a judgment of the Supreme Court rendered against him on the 15th

day of March, 1922, convincting him of the crime of grand larceny in the first degree after a trial at the New York Trial Term.

*Harry G. Fromberg (Leonard F. Fish and J. M. Cohen* with him on the brief), for the appellant.

*Joab H. Banton, District Attorney (Felix C. Benvenga, Assistant District Attorney, and Robert D. Petty, Deputy Assistant District Attorney,* with him on the brief), for the respondent.

CLARKE, P. J.:

An examination of the record satisfies us that upon the facts the verdict of the jury finding the defendant guilty was supported by the evidence and should not be interfered with. A question of law, however, is presented for our consideration. The defendant took the stand and testified in his own behalf. On cross-examination the following occurred: " Q. You were brought up before the bar at General Sessions, do you remember, after the indictment? A. Yes. Q. And there is a judge sitting on the bench and he said to you through the clerk, ' How do you plead, guilty or not guilty?' Do you remember that? A. Yes, sir. Q. And you said you pleaded guilty, do you remember that? Yes or no? Do you remember that? A. I do not remember. Q. Do you mean to say you did not plead guilty? A. I pleaded guilty without my knowing it. Q. And then afterwards you got your lawyer and you withdrew that plea, didn't you? A. No, sir. Mr. Fromberg: Will the Court allow me an exception to that question and a motion to strike it out? The Court: Motion denied. Mr. Fromberg: I respectfully except. Q. After you made this plea of guilty, then the court gave you permission some time afterwards to withdraw your plea of guilty and to go to trial, do you remember that?

A. Yes. Q. Now, you are pleading not guilty, aren't you? A. I do. All this happened last month, didn't it, February? A. That is right."

Upon redirect examination the following occurred: Question by his attorney: " Now, Mr. Steinmetz, were you represented by an attorney at the hearing in the Magistrates' Court? A. I was not. Q. And did I represent you at the time you were brought before the Court of General Sessions, Criminal Term, when you pleaded guilty? A. You did not. Q. Who did represent you? A. A party by the name of Nathan Greenberg. Q. You had known him before, didn't you? A. I did. Q. Was he recently admitted to the bar? A. Just recently. * * * Q. Did Mr. Greenberg tell you what the plea of guilty meant? A. He did not say anything to me. Q. Did the district attorney say anything to you at the time or to Mr. Greenberg? A. He said something to Mr. Greenberg which I overheard. Q. What did he say to him? A. He said to him: ' Are you willing to talk business? ' That is all, and something else— Q. Do you remember what he said? A. About reducing charges or something. I think I ain't got quite the right story. Q. Now, why did you plead guilty? A. I didn't know what I was asked. My counsel said: ' Say yes,' and I said yes. Q. What happened after that? A. I walked in to the probation officer. Q. You were sent in by the court? A. Yes. The probation officer asked me several questions. Q. About what? A. First, my name and address, then about the case. So I says: ' I don't know nothing about it.' She says: ' How is it that you pleaded guilty if you don't know nothing about it? ' Q. You mean the probation officer said that? A. Yes. This was the first I found out that I pleaded guilty. I said: ' Did I plead guilty? ' She says: ' Why sure you did; otherwise you would not be here.' I says: ' I didn't know anything about it.' So this lady called up the lawyer. Q. Then what was the very next thing you did? * * * Did you see me the same

day or the day after? A. I think the day after. Q. Did you tell me all about this story about your plea of guilty? A. I did. Q. And about the probation officer? A. I did. Q. Did I ask you the facts in this case? A. You did. Q. Did I advise you as to whether in my opinion you were guilty or not? A. You did. * * * Q. As the result of interviewing me, you and I appeared before the Court of General Sessions and I in your behalf asked that the plea of guilty be withdrawn and I gave reasons for it, didn't I. A. Right. Q. And permission to withdraw the plea was granted? A. Was granted, right. Q. And then were you permitted to plead not guilty? A. Yes."

Upon recress-examination: " Q. Do you know that this indictment was found in January, 1921? You understand that— January, 1921? A. I do not quite understand. Q. This indictment right here was found January 21, 1921, that you understand, don't you? A. I think it was 1920—Oh, January, yes, that is right. Mr. Fromberg: I object to the question. The records speak for themselves. The Court: I will let him examine. The indictment was filed the 21st day of January, 1921, and the plea of not guilty made January 26, 1921. Then, February 16, 1922, he pleads guilty of grand larceny, second degree. February 27, 1922, pleads over not guilty. Those are the indorsements on the indictment. Q. Now, you say on February 16, 1922, just about three weeks ago, you were called to make your plea; first you pleaded not guilty—you know that, don't you? A. Yes. * * * Q. Then you said something about reducing the charge. I call your attention to the fact that this indictment is for grand larceny in the first degree. You pleaded guilty to grand larceny in the second degree. A. I pleaded unconsciously, without my knowledge. Q. You know what pleading means, don't you? A. Well, I did not quite understand it at the time. Q. You know what a plea of guilty is, you know now? A. Now I know. Q. You know what the word ' guilty ' means? A. I have almost become a lawyer now.

The case has taught me all right. * * * Q. And in February, three weeks ago, you certainly knew what the word guilty meant, didn't you? A. I did."

Redirect: " Q. You pleaded not guilty when you were first presented at the Court of General Sessions in 1920, didn't you? A. I pleaded not guilty. Q. And then it took all this length of time for your case to come up for trial? A. Exactly. Q. Between the time that you pleaded not guilty and the date that you pleaded guilty by the advice of youd former counsel? A. Right."

Recross: " Q. You told your former counsel as much about the case as you told this gentleman, didn't you, Mr. Steinmetz? A. I did."

The learned trial court in his charge to the jury stated as follows: " Upon that indictment this defendant was arraigned on the 26th of January, 1921, four or five days after it was presented in court, and interposed a plea of not guilty. I don't know what happened to the indictment from that date on until February, 1922; but it does appear in evidence that upon the 16th of February, 1922, a year after the entry of the plea of not guilty, the defendant appeared in court and withdrew his plea of not guilty and interposed a plea of guilty of larceny in the second degree. And it also appears that upon the 27th of February, eleven days thereafter, the defendant appeared in court and withdrew his plea of guilty and again interposed a plea of not guilty to this indictment. The issues presented by the plea of the defendant of not guilty to this indictment are presented to you gentlemen for your determination. It might be interesting to spend a moment's time upon what effect the plea of guilty as made by the defendant on the 16th of February, has upon this charge. That plea if it were an intelligent one, if it were made with full apprehension of its effect, with full knowledge that it was an admission of the wrongdoing, that it was made consciously, with an understanding and an intelligent

intent to concede and admit the wrong doing—if those were the circumstances under which that statement was made in open court, in the presence of the court and the audience and the public—if that is the effect of that statement, then I say to you that is one of the highest classes of evidence that can be established against a person. It is an admission of the truth—one of the highest degree of evidence. So the moment you consider this charge against this defendant and have that statement made to you, as appears from the evidence, that he did at that time plead guilty, you are confronted with the question of what weight you will give to that statement. Consider all the facts and circumstances that have been presented surrounding that transaction in court at that time and reach a conclusion as to what weight and consideration you will give it. If it was an unappreciated act, unconscious, made without deliberation or understanding, an ignorant and foolish statement, of course, you can see that reasonable men like you jurors, would not give it the weight that you would give to it were it an intelligent, considered, wise or understandable act. So I am going to say to you gentlemen that upon approaching the consideration of this case you make up your minds what weight you will give to that statement. If you reach the conclusion that it was a binding statement, of course, that is one thing. If your conclusion is that it was not, it is as nothing; but he comes into this court now for trial upon a plea of not guilty, and I must say to you that this plea of not guilty, which raises the issue for consideration upon this indictment, entitles him to the presumption of innocence, and that remains as a defense until the People have proved by evidence that reaches your minds, and establishes to your satisfaction and beyond a reasonable doubt, that he is guilty."

It is claimed that the admission of the evidence above set forth, elicited from the defendant upon his cross-examination, of a previous plea of guilty, subsequently withdrawn by leave of

the court, was a fatal error which requires a reversal of this judgment.

There is here presented a question which has not heretofore been authoritatively decided in the state. The few cases in the reports of other states, where the evidence was offered by the prosecution as part of its case, differ widely in their conclusion, and even where the point has been decided, whether for or against the contention of the appellant, there were vigorous dissents. We have found no case in which the precise question here at issue has been decided, namely, whether when a defendant in a criminal case has himself taken the stand and subjected himself to cross-examination he may not be inquired of as to whether or not he has in former proceedings interposed the plea of guilty. It is the settled law in many states, and precisely held in this state in People v. Jacobs, 165 App. Div. 721, Mr. Justice Putnam writing in the Second Department, that proof of a prior plea of guilty was admissible upon a new trial. He said: " There was no error in receiving testimony of a prior plea of guilty. Defendants had so pleaded, although thereafter on their motion the county judge had reversed this judgment and given them a new trial. The voluntary plea of guilty at the prior hearing was an admission  *  *  *  which, with the other evidence, was properly left to the consideration of the jury."

In State v. Carta, 90 Conn. 79, decided in 1916, the court said: " The ground of error most insisted upon in the case is that which relates to the court's action in permitting the State, against the objection of the accused, to prove from the record in the case that he had previously in the Superior Court entered a plea of guilty to the same information upon which he was being tried, but had withdrawn that plea by leave of court and entered a plea of not guilty.  *  *  *  The fact that the plea was accepted is *prima facie* proof that the confession was voluntary, and, as before stated, if not withdrawn, it was conclusive

of the guilt of the accused. Where, as in this case, the plea had been withdrawn, it was not conclusive, and it was open to the accused to show, if he could, that the plea was mistakenly entered. It is apparent from the record that the State offered the proof that the accused entered the plea of guilty and afterward withdrew it, not as proof of a judicial confession which would be conclusive upon the accused, but as showing conduct on the part of the accused which was inconsistent with his claim of innocence before the jury. * * * It was thus by all parties treated as an extra-judicial confession or admission. Such an admission or confession is not conclusive, and, unless further proof to establish the *corpus delicti* is offered, is not sufficient to justify a conviction. * * * It appears from the record that such further proof was offered by the state in the present case. When the fact was established that the admission had been made by the accused, the admission was not before the jury as testimony by the accused establishing the truth of all or any of the allegations of the information, but the fact that he had made it—had pleaded guilty—was before them, and was relevant as being inconsistent with his claim to the jury that he stabbed Barlotta in self-defense and was not guilty."

The court then referred to People v. Ryan (82 Cal. 617) and State v. Meyers (99 Mo. 107), in which the evidence was held inadmissible, and then called attention to a case in Kentucky (Commonwealth v. Ervine, 8 Dana, 30), where "a sentence upon a plea of guilty had been reversed, and, upon a trial thereafter had upon a plea of not guilty entered without objection by the Commonwealth, the former plea of guilty was introduced in evidence, and it was held that it was properly admitted, but was not conclusive of the guilt of the accused. Where an accused person has pleaded guilty in a justice or other inferior court, and has taken an appeal, or been bound over to high court, he is there always permitted to plead anew, and it has always been the rule in this state

that upon the trial there the fact that he pleaded guilty in the lower court might be put in evidence either by the record or by testimony of witnesses who were present and heard the accused when he entered the plea. This is not conclusive upon the accused, and is insufficient to warrant a conviction without other evidence to prove the *corpus delicti*. This is the rule in a majority of the other states, although some have held that the confession in the lower court is a judicial confession and sufficient, without independent evidence of the *corpus delicti*, to warrant a conviction. It would seem that the same principle which admits the admission or confession of the accused in the lower court to be introduced against him in the upper court should admit, with the same consequences, his confession by a plea of guilty, afterward withdrawn, in the upper court. * * * The withdrawal of the plea withdraws the evidence of conviction, but it does not withdraw the fact that such a plea was entered. It is as competent to give evidence of that fact as to give evidence that a similar fact occurred in the justice or magistrate's court. Neither is conclusive upon the accused. The evidence in each case establishes a fact which is inconsistent with his later claim before the jury that he is innocent."

In Heim v. United States (47 App. D. C. 485), it was held that " a plea of guilty to an indictment afterwards withdrawn by permission of the court cannot be proved against the defendant on his trial upon a subsequent plea of not guilty," but in that case there was a strong dissent.

It should be noted that in all cases which have considered this subject the evidence objected to was offered by the prosecution as a part of its case. In the case at bar the evidence was elicited upon cross-examination of the defendant who offered himself as a witness in his own behalf and who thereby put himself in the position of an ordinary witness, submitting his credibility to the jury and being subject to

24

cross-examination in like manner.  I fail to see under such circumstances why the questions put to him were not proper, if for no other reason, upon the ground of showing contradictory statements.  Surely if he had told some one out of court that he had been guilty of the larceny charged against him that would have been receivable in evidence; and why, when he admitted it in open court, it was not competent, not as conclusive proof of the fact but to show inconsistent statements upon his part in regard to the fact, I cannot see.  Carefully and properly limited and guarded as this evidence was by the charge of the learned court as quoted *supra*, I think there was no error in the admission of the evidence.

It follows that the judgment appealed from should be affirmed.

MERRELL, FINCH and MARTIN, JJ., concur.

Judgment affirmed.