No. 64.—NICHOLAS TOMPKINS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] If two or more embark in a common enterprise, the acts and declarations of each of the confederates, made or done in pursuance of the preconcerted agreement or understanding, are evidence against the other ; and whenever enough of evidence is given in, as will conduce to prove a *prima facie* case of concurrent or joint action, the whole transaction should be submitted to the Jury.

[2.] It is competent to prove that a party has assigned a false reason for his conduct, as it serves to convict him of the true one.

[3.] Where two assaults and batteries are committed on the same day, within a short period of each other, it is competent for the Solicitor General, under the same indictment, to try the defendant for either : but he cannot submit both to the Jury at the same time ; especially, if no proof has been offered as to the *second*, except only for a limited purpose, and not to establish, fully, the guilt or innocence of the accused.

[4.] If the Solicitor fail to support the one by proof, can he abandon that and proceed to try the defendant for the other ? *Quere.*

Assault and battery, in Heard Superior Court. Tried before Judge O. WARNER, November Term, 1854.

Nicholas Tompkins was placed upon his trial for an assault

and battery upon one William F. Crockett.    It appeared that Tompkins and some others left Franklin one afternoon about dusk, and near the bridge, on Tompkins' road to his home, a wagon overtook him with Crockett—Phillips and McDaniel in it.    A quarrel ensued—(about which the evidence was very contradictory)—Crockett jumped out of the wagon and advanced towards Tompkins, who struck him with a stick.    McDaniel then threw a rock at Tompkins.    The matter was quieted, and they started on.    Counsel for Tompkins proposed to prove, that McDaniel jumped out of the wagon to help Tompkins; that one of the crowd in the wagon was seen to pick up rocks and put them in his pocket, before the wagon started from town; and that one Foster James, a brother-in-law of Crockett, threw rocks at Tompkins just before the wagon overtook him, and that James then went up and urged on the difficulty; all of which was offered to prove a *conspiracy* to mob Tompkins.    The Court rejected the evidence, unless notice of the conspiracy was brought home to Tompkins.    To which decision Tompkins excepted.

Crockett, when examined, stated that he was a Justice of the Peace and was going, that evening, to prepare a *certiorari* bond for one James F. Bevis.    Bevis was offered as a witness, to prove that Crockett saw him at the Cross Roads that evening, and said nothing about a *certiorari* bond, &c.    The Court rejected the evidence and Tompkins excepted.

Crockett also stated, on examination, that he had no desire for a difficulty, and desired peace.    It was proven that he said the same thing after the battery.    The Court admitted evidence, to show that he afterwards, on the same evening, threw other rocks at Tompkins, after the party reached the Cross Roads, for the sole purpose of disproving his professions of peace.    This evidence showed another rencontre at the Cross Roads.    The Solicitor, in his argument, relied on this second rencontre, to convict for a battery.    Counsel for Tompkins objected, as the evidence was admitted for a different purpose, solely.    The Court charged the Jury, that they might consider this evidence and find him guilty, on that alone.    To this

charge, Tompkins excepted. A motion was made for a new trial, on all these grounds, and also because the verdict was contrary to the weight of evidence. The Court refused this motion, and Tompkins excepted. On these exceptions, error is assigned.

B. H. HILL, for plaintiff in error.

SOL. GEN. BLAKELY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first exception in this case, applies to a considerable portion of the exculpatory testimony relied on by Tompkins. The Circuit Judge ruled out as evidence, all the acts and declarations of every other person implicated with Crockett in the alleged conspiracy to mob Tompkins, unless notice thereof was brought home to the defendant.

The assault and battery is not denied. Tompkins pleads that he was justified in striking Crockett. There is some conflict of testimony as to what transpired when the rencontre took place; and the doubt consequently is, who was culpable for forcing the fight? Now if it could have been shown that there was a preconcerted plan—a common enterprize set on foot by Crockett and his crowd, to beat Tompkins, is not the proof admissible, as calculated to reflect light on the conduct of Crockett, when he overtook Tompkins?

But a portion of the proof connects itself still closer with the transaction. When Crockett dismounted from the wagon, McDaniel, who was riding with him, jumped out also and pulled off his coat; and Phillips, another one of the associates, held the reins of the horse. Do not these demonstrations, connected with the previous purpose, make McDaniel and Phillips parties to the combat? Were they not actually present, aiding and abetting? And may we not—nay, *must* we not, suppose that Tompkins acted in the light of these surrounding circumstances, indicating the peril which beset him?

We admit that the competency of the testimony depends upon the fact of a concert and communication between the parties. If they embarked in a common enterprise, and they acted together in pursuance of this preconcerted agreement or understanding, Crockett is not only answerable for the acts of his confederates, but their acts and declarations are admissible, as a part of the *res gestæ*. The whole conduct, acts and declarations of the one are evidence against any one of the others. Crockett seeks the protection of the law for an injury inflicted on his person by Tompkins. If he and several others united to pursue Tompkins for the purpose of whipping him, and thus brought about the difficulty, the prosecutor comes with a poor grace to claim the vengeance of the law upon the head of his successful foe. The law was made to shield those from insult and abuse, who live in the peace of God and of the State, and not as an immunity to bullies and bravadoes.

It is not for us to decide, neither was it for the Court below, how far the connection between Crockett and the other parties is proved. This could only be done by their acts and declarations made in the presence of Crockett and in furtherance of the scheme which they had on foot. There was enough offered to make out such a *prima facie* case of concert and joint action as to make it proper to submit the whole to the Jury.

The general rule is this: in cases of crime perpetrated by several persons, when once the combination is established, the act or declaration of one accomplice in the prosecution of the enterprise, is considered the act of all, and is evidence against all. (*Arch. Crim. Law*, 6th *Ed.* note, by *Waterman*, *p.* 125–'3.)

[2.] As to the testimony of Bevis, which was rejected, it went to show that Crockett assigned a false reason for going to the Cross Roads. He pretended that he was going there to fix up a *certiorari;* that being untrue, the Jury were left to infer that he thus went out of his way to seek an interview with Tompkins. Cromwell, to justify the murder of his Monarch, pretended that his tongue clave to the roof of his mouth

while praying for his safety and deliverance. A girl, who gives as a reason why she is not in love, that her beau is no older than herself, is already a victim to the tender passion. So it has been with men and women, too, in all ages of the world.

[3.] The next point in this case is this: Counsel for the defendant, by leave of the Court, had propounded some questions as to what transpired at the Cross Roads, but confessedly for the purpose of discrediting Crockett, and for none other. And the examination was sanctioned by the Court, for this single object. The Solicitor General, at the commencement of his argument, announced his intention to ask a conviction of the defendant for the battery which occurred at the grocery at the top of the hill. He was asked by the Court if he could produce authority to authorize such a practice, and the case of *Wingard and Ham vs. The State*, (13 *Ga. Rep.* 396) was cited in support of it. The discussion proceeded. His Honor, in the meantime, examining the case. Toward the close of the case, the Judge held that it was competent to convict Tompkins for the last assault.

Did *Wingard and Ham vs. The State*, sanction this proceeding? Two propositions were embraced in that decision. First. That playing and betting with cards, at any one of the games designated in the 11th section of the 10th division of the Penal Code, will constitute an offence; and that for every such game, unconnected with the other, an indictment will lie; yet, when all are perpetrated by the same person at the same time, they constitute but one offence. And Secondly. That the proof of guilt was not confined to the day mentioned in the indictment; but may extend to any period previous to the finding of the bill and within the statutory limit for prosecuting the offence.

[4.] Were these batteries one in law, and could they be so treated? no more so than if one of them had been made in the morning and the other in the evening. And upon the other ground, the State having elected to try the defendant for the first assault, could not convict him of another; and that, too, not only without abandoning the first, but what is infinitely more objectionable, without the defendants having been tried

for the second.   Had the prisoner been notified, before the proof closed, that the first assault was abandoned, and that the Jury would be called upon to give a verdict for the second, other testimony might and probably would have been adduced to that.   How stands the matter then?   The Jury may have thought Tompkins not guilty in the first case, the only offence for which he was *tried*, and convicted him of another, for which he was not tried!

This judgment, we are clear, cannot be sustained.

As a new trial will be awarded, we forbear to express any opinion upon the evidence.