[No. 3,221.]

# THE PEOPLE OF THE STATE OF CALIFORNIA v. WILLIAM DONOVAN.

EVIDENCE OF RECORD.—Showing the original verdict of a Coroner's jury to a witness in a criminal case and asking the witness if he had signed the verdict, is not "an effort to prove the contents of a written record by parol."

IDEM.—Where a witness is asked if he had signed a paper of a certain tenor, stated in the question, and before answering is shown and examines the original, it is not error to admit his answer in evidence.

TESTING VALUE OF OPINION OF WITNESS.—The value of the opinion of a witness may be tested by showing that on a former occasion he has expressed a different opinion, and by inquiring as to the grounds upon which the change of his opinion had been brought about.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The first three instructions asked by the defendant were as follows:

"1. A person while in a state of insanity is by law deemed to be incapable of crime. And insanity of the prisoner at the instant of commission of the offense can be established by evidence tending to prove that he was insane at some period before or afterwards.

"2. The presumption of law is always prima facie in favor of sanity. Whenever the exemption from liability is claimed on the ground of mental unsoundness it devolves on the party claiming it to allege and prove it. That allegations and proof being furnished the legal presumption changes, and the mental unsoundness is presumed to continue until the allegation and proof of a complete restoration or a lucid interval.

"3. In a criminal case, if the defendant relies upon insanity as a defense, proof beyond a reasonable doubt is not required, but the burden of proof is cast upon him, and his insanity must be established by such a preponderance of

evidence, that if the single issue of the sanity or insanity of the defendant was submitted to the jury in a civil case they would find that he was insane."

The defendant excepted to the refusal of the Court to give these instructions. The Court, among other instructions, gave the following:

"As a general rule an insane man is incapable of committing crime; but there are exceptions to the rule. A person sometimes insane, who has lucid intervals, or is so far sane as to distinguish good from evil, right from wrong, may commit crime and be legally held responsible. * * * If you find from the evidence that the prisoner committed the offense charged, and at the time he committed the same his mind was so far disordered or diseased that he was incapable of distinguishing good from evil, right from wrong, he was irresponsible and should be acquitted; or if he was, at the instant of the alleged shooting, deprived of reason, though then in a semi-conscious state, the act in law was non-volitional, and he is not responsible; or, if he was at that instant unconscious, he is not responsible. Nor is he legally responsible if he was impelled to shoot the deceased by an uncontrollable influence and was at the moment unconscious of doing wrong. * * * You can also, in determining the question of sanity or insanity, or responsibility, consider all the evidence given, either on behalf of the prosecution or the prisoner, and apply to the facts developed your knowledge of human nature and the tendencies of the human mind, and thereby ascertain whether or not he was, at the time the mortal wound was inflicted, responsible for the act. If it be shown that the intellectual faculties were so impaired as to produce a general habitual derangement of them, not traceable to some temporary cause, the law would presume the mind to have continued in the same state until the contrary was shown; but the principle

is different in reference to temporary or periodical insanity, resulting from some transient cause, for then the presumption would be that the mind was restored to its normal condition when the disturbing element had ceased to operate. On a trial for murder the accused is presumed to be sane until the contrary is made to appear by the evidence, and if insanity is relied upon as a defense it must be established affirmatively by a preponderance of proof."

The other facts are stated in the opinion.

*Thomas A. Brown*, for Appellant.

*John L. Love, Attorney General*, for the People.

By the Court, WALLACE, C. J.:

The prisoner upon trial upon an indictment for the crime of murder relied for defense upon his alleged insanity at the time of the homicide, and called as a witness one O'Neal, who testified to some peculiarities in the appearance and conduct of the prisoner on the day of the homicide, and stated his belief therefrom to be that the prisoner "must have been entirely out of his right mind," etc. Upon cross-examination, the District Attorney exhibited to the witness a paper purporting to be signed by the witness and inquired if his name appearing thereto was in his handwriting, to which the witness answered that his signature thereto was genuine. To this inquiry and to the answer thereto, there was no objection made upon behalf of the prisoner. The witness was then asked by the District Attorney if he had signed a verdict as a member of the Coroner's jury—the verdict being produced and read to the witness as part of the question—it appearing that the verdict was to the effect that the killing done by the prisoner was done with malice aforethought and with premeditation. Before he answered the question, the verdict inquired of was placed in his hands,

and he was permitted to read and examine it.   The counsel for the prisoner thereupon objected to the question on the ground that it was "incompetent, irrelevant, and inadmissible, and as an effort to prove the contents of a written record by parol."   This objection was overruled, and the witness thereupon answered that he did sign the verdict in question.

1. That the examination of the witness did not involve "an effort to prove the contents of a written record by parol" within the objection made by the prisoner is clear, for it distinctly appears that the paper placed in the hands of the witness, and concerning which the inquiry was made, was the *original verdict* referred to.

2. It also appears by the bill of exceptions contained in the record that the District Attorney did inquire of the witness whether or not, as a member of the Coroner's jury, he signed a verdict of a certain tenor or effect—undertaking, in the question as asked, to state its tenor and effect.   Conceding that such a question was objectionable within the rule to be observed upon cross-examination of a witness in such cases, it does not appear that any objection was taken to the question by the prisoner's counsel; but even had such objection been made at the time the question was asked, it also appears that before the witness answered the "original verdict" was shown to him, and he answered only after he had examined and read the same.

3. It was competent to inquire of the witness whether or not he had signed the verdict in question, or if he had alone, or in connection with other persons, signed any other writing then produced and shown to him, to the effect that the prisoner was not insane.   Though proof that the witness had signed a paper, written a letter, or made statements at any former period of time to the effect that in his then opinion the prisoner was sane, would not amount to an impeachment of him in the strict sense as a witness, yet it would at all events go to the reliability of his opinion.   It would, in this

view, certainly be pertinent to inquire of a person testifying to his opinion in a case whether or not he had before then expressed a different opinion, and also, if desired, to inquire of the grounds or matters upon which the change of his opinion had been brought about, and to do so would not necessarily be to discredit or to question his veracity, but to test to some extent the value of his opinion.

The charge given by the Court correctly set before the jury the principles of law applicable to the case, and there was no error in refusing the first three instructions asked by the prisoner.

Judgment affirmed and the Court below directed to fix a day to carry the sentence into execution.

Neither Mr. Justice RHODES nor Mr. Justice CROCKETT expressed an opinion.