# Walker *v*. The State.

*Indictment for Burglary.*

1. *False explanation by person accused, of suspicious circumstances.* — When a person who is suspected of or charged with a criminal offence gives a false explanation of any suspicious fact or circumstance tending to connect him with the offence, this is regarded as a criminative circumstance, proper to be submitted to the jury.

[Walker *v.* State.]

2. *Charge as to part of evidence.* — Under an indictment for burglary, in break-ing and entering a "cotton-house" with intent to steal, the prisoner being identi-fied as the guilty agent by his shoes, which fitted tracks found leading from the cotton-house to a neighboring gin-house, and thence to the house where he lived; and the evidence being conflicting as to whether any of the cotton found in the gin-house was the stolen cotton of the prosecutor, — a charge which instructs the jury, "that whether the cotton went to said gin-house or not, was a question not necessary to be considered by them," is not an invasion of the province of the jury, nor otherwise objectionable.

3. *Charge as to reasonable doubt.* — The refusal of the court to charge the jury, on the request of the defendant in a criminal case, that the evidence must satisfy them, beyond a reasonable doubt, of the existence of every fact necessary to con-stitute the offence, is an error which will work a reversal of the judgment.

FROM the Circuit Court of Henry.

Tried before the Hon. J. McCALEB WILEY.

The indictment in this case charged that the defendant, Henry Walker, *alias* Henry Carroll, "with intent to steal, broke and entered into the cotton-house of John M. Woods, in which goods, merchandise, or other valuable things, were kept for use, sale, or deposit." On the trial, the defendant reserved a bill of exceptions, which purports to set out all the evidence, and shows substantially these facts : The prosecutor had removed almost all of his cotton from the cotton-house to his gin-house ; and, on the evening before the alleged burglary, he had made his servants gather all the scattering locks of cot-ton lying about the floor, or sticking to the walls, into one heap, which contained, as he supposed, about eight hundred pounds. On the next morning, he discovered that the house had been broken into during the night, and about three hun-dred pounds of cotton stolen. Tracks were found around the house which led off through the fields to a gin-house belong-ing to Mrs. Culver, and thence, after being lost for a short dis-tance, to the house in which the defendant lived. The prose-cutor and his two sons followed these tracks, and found the defendant at home, about eight o'clock, eating his breakfast. A pair of shoes was lying on the floor, which appeared to be damp and muddy, and which, the defendant said, belonged to his wife, though he sometimes wore them. These shoes were afterwards compared with the tracks, and were found to cor-respond exactly. The prosecutor, on examining the shoes, said to the defendant, "These are the shoes that were at my gin-house, last night;" and the defendant then said, that he had loaned them, the night before, to "Lewis," or Lewis Grace. Lewis Grace, a freedman, was examined as a witness for the prosecution, and testified that he had not borrowed any shoes from the defendant on that night; and Nero Grace, the father of said Lewis, testified that on the night of the burglary the defendant came to his house about twelve o'clock, inquired for Lewis, and said that he wanted to see him on particular busi-ness. The defendant objected to the evidence of said Nero Grace, and reserved an exception to its admission.

[Walker *v.* State.]

The evidence was conflicting on the question whether any of the cotton found in Mrs. Culver's gin-house was the stolen cotton of the prosecutor. The cotton was compared, when the gin-house was opened, with samples of the prosecutor's cotton, and also with samples of cotton belonging to Ezekiel Culver, the son of Mrs. Culver, who had charge of the gin-house. The prosecutor's testimony tended to prove that the cotton was his, while the testimony of said Ezekiel Culver tended to show that it was not; and each of said witnesses admitted that there was scarcely any difference in all the samples. " The court thereupon charged the jury, among other things, in substance as follows : ' Gentlemen of the jury, you have nothing to do with the evidence in relation to whether the cotton went to Mrs. Culver's gin-house or not; that is not a question necessary to be considered by you;' to which charge the defendant excepted."

" The prisoner then requested the court to give the following charges, which were in writing : 1. That unless the jury believe from the evidence, beyond all reasonable doubt, that the defendant, within three years before the finding of the indictment, and within the County of Henry, ' broke and entered into the cotton-house of John M. Woods, in which goods, merchandise, or other valuable *things*, were kept for sale, use, or deposit,' with intent to steal, they are bound to find him not guilty. 2. That although the jury believe from the evidence, beyond all reasonable doubt, that the defendant did, within three years before the finding of the indictment, break into and enter the cotton-house of John M. Woods, in said county, and did steal cotton therefrom, yet they cannot find him guilty as charged, unless the evidence also proves, beyond a reasonable doubt, that goods, merchandise, or other valuable things, were kept in said cotton-house, for use, sale, or deposit, at the time of said breaking, entering, and stealing. 3. That if the jury believed the evidence, they must find the defendant not guilty. The court refused these charges, and the defendant excepted to their refusal."

W. C. OATES & BROTHER, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

BRICKELL, J. — When a person suspected of or charged with a criminal offence gives unsatisfactory or false explanations of any suspicious fact or circumstance connected with the offence, or gives false, evasive, or inconsistent replies to pertinent inquiries made of him, it is regarded as a criminative circumstance, proper to be submitted to a jury, the weight of which

[Walker v. State.]

they must determine. Tracks were discovered, leading to and from the cotton-house alleged to have been broken into on the night preceding. The shoes supposed to have been worn by the person making the tracks were found the next morning in the prisoner's house. He is informed it is believed that some one wearing those shoes made the tracks leading to and from the cotton-house. The shoes are found to be damp, and some mud and loose dirt are sticking to them. The prisoner said he had loaned the shoes to Lewis Grace. If this was true, it would tend to relieve the prisoner from the suspicion attaching to him because the shoes were found in his house, and because they bore marks of having been recently worn. If it was not true, the force of the circumstances criminating him would be increased, because of his effort by a false statement to relieve himself. The evidence offered and admitted against his objection was, that about midnight of the night the offence was committed, the prisoner was inquiring for Lewis, and expressing a wish to see him. This evidence certainly had a tendency to show the falsity of the prisoner's statement, and was properly admitted. Besides, Lewis testified that the prisoner had not loaned him the shoes, and the evidence was corroboratory of his testimony.

2. The evidence introduced by the State tended to show that the cotton taken from the cotton-house had been carried to Mrs. Culver's gin-house. There was evidence offered by the prisoner tending to negative this fact. The court charged the jury that they had nothing to do with the evidence in relation to whether the cotton went to Mrs. Culver's gin-house or not; that was not a question necessary for them to consider. We do not understand that the court intended to instruct the jury, or that they could reasonably have considered this instruction, as authorizing them to exclude from their consideration any evidence tending to show that the offence charged had not been committed, or any evidence connecting or disconnecting the prisoner with the offence. All the court intended by the charge, and all, doubtless, the jury understood from it, was, that it was not necessary to the prisoner's guilt that the cotton alleged to have been stolen should have been carried to Mrs. Culver's gin-house. There is nothing in the charge invading the province of the jury to consider the conflicting evidence, as to whether it was taken there or not, so far as they may have deemed that fact to affect the question of the prisoner's guilt.

3. The first charge asked by the prisoner and refused only asserted the familiar principle, that the evidence must satisfy the jury, beyond all reasonable doubt, of every fact necessary to the prisoner's guilt. The refusal of this charge necessarily

[State v. Fitts.]

works a reversal of the judgment. The other charges asked by the prisoner were properly refused.

The judgment of the Circuit Court is reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.