CLAUDIO ORTIZ, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A new trial will not be granted for the purpose of permitting the accused to prove by a State's witness that he did not say in a conversation at a certain time and place, as to which he had testified, something which is not shown to have been said by such witness, but is admitted by prisoner's counsel not to have been said, and which the jury in their deliberations were bound to assume that he did not say, there being no proof that he did say it.

2. A photograph or other picture proved to be a correct representation of physical objects as to which testimony is adduced, is admissible in evidence for the use of witnesses in explaining their testimony, and thereby enabling the jury to understand the case more perfectly; but whether or not a photograph which has been offered for such auxiliary purpose has been proved to be a true representation, is a question to be decided primarily by the trial judge, and his decision of it will not be reversed when it is not shown that he has erred; and certainly not where it is clear that the admission of a photograph, which he has excluded, would have served, had it been admitted, as an agency of confusion, rather than of assistance, to the jury.

Claudio Ortiz v. The State of Florida.—Syllabus.

3. Where an objection appears not to have been ruled on by the trial judge, and no ruling appears to have been insisted on by the party making the objection, the appellate court will treat the objection as having been abandoned in the trial court.

4. Where a question to a witness is not improper in itself, but the answer presents evidence which is illegal or objectionable on any known ground, the proper court practice is a motion to strike it out and have the jury directed not to consider it, the movant specifying his objection to the evidence with like particularity as in objecting to questions.

5. The action of a trial court in permitting the State, or other plaintiff, after it has closed its testimony in chief and the defendant has put in his testimony, to introduce evidence that is not in rebuttal of that of the defendant, will not be interfered with by the appellate court unless it appears that the defendant has been placed in an unfair position or suffered some disadvantage or injury from the fact of the admission of such evidence after the defendant had closed his case.

6. The mere tendency of testimony to prejudice a defendant's cause with the jury is not ground for its exclusion; but where testimony is both irrelevant to the cause and calculated to prejudice the defendant in the minds of the jurors, it should not be admitted, and its admission may be ground for a new trial.

7. A remark of the accused made but shortly before the homicide and near the scene of it, and tending to illustrate the degree of his animus against the person at whom the fatal shot was fired, in that it showed that the accused was not acting impartially in the exercise of an official power with which he was vested, but was disposed to shield another person who might be the legitimate subject of its exercise, which power he had recently exercised against the person shot at, is admissible in evidence against the accused.

8. Where a defendant on trial for crime makes a statement under oath of his defense to the jury, under the provisions of the

17

statute, (§2908, R. S..) a previous inconsistent statement made under the same statute is admissible against him as evidence of his guilt, and without his mind being directed to the time, place or circumstances of such inconsistent statement, just as, prior to the statute, were all voluntary inconsistent statements of the accused as to the alleged offense and its circumstances; but it is not admissible for the purpose of impeaching his credit or veracity as a witness, for, not being subject to examination or cross-examination, nor given the full status of a witness by our statute, he is relieved from any attack to which, by the known rules of evidence, a cross examination or cautionary suggestions were prior to the statute an essential prerequisite.

9. A statement made under the statute by an accused of his defense is to be regarded as entirely voluntary, unless there is proof of circumstances refuting such presumption.

10. Where evidence has been admitted on the trial of a cause in which it was admissible for one purpose, the presumption is that it was admitted for that purpose, and not for an illegal or prohibited purpose.

11. Where testimony which is admissible in a case for one purpose is objected to on grounds for which it would not be admissible, the mere overruling of such objection is evidence that the grounds stated were held not to be a sufficient objection to its admission in that case, but is not of itself evidence that the testimony was admitted for an illegal or prohibited purpose.

Writ of Error to the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*E. R. Gunby*, *Wall* & *Knight* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

The plaintiff in error was found guilty of murder in the first degree at the Fall term of Hillsborough Circuit Court of last year for killing Pablo Cassanbo Serra, but was recommended to the mercy of the court; and was sentenced to imprisonment in the State penitentiary at hard labor for the term of his natural life, as provided by the statute in case of such recommendation.

I.   The first alleged error assigned is the ruling of the Circuit Judge sustaining the State's objection to the following question asked Francisco Ysern, a witness for the State, by defendant's counsel on cross examination: "Did you or not at the time the valise with the cigarettes, to which you testified, was taken to the custom-house, where you say that you were present, make any statement as to their being the property of Claudio Ortiz?" The objections made to the question were: That it was not in cross of anything brought out in the examination in chief; and that it tended or sought to impeach the witness, and the time when, and place where, and the language used by the witness, were not stated in the question.

The witness testified on his direct examination that on the morning of the fatal day, Saturday, May 9th, 1891, in Tampa, to which place defendant and the witness had gone from Ybor City on the eight o'clock street car, the defendant said to witness at the post office: "Well, what are you going to do?; are you going to give me the $300 or not?" To this, witness replied he could not give it to him because he did not have it; and then defendant said: "Well, if you don't give it to me, I will make you spend all you have;" and witness answered: "Well, no matter how much you will make me spend, there will always be something left for me." Thereupon witness went away from the defendant, and returned to Ybor City. Witness then says that at twelve o'clock that day, one Garcia had a power of attorney to sell a bar-room, and that Pattillo sent for him, and while he was there a boy came for witness, and witness returned to his own bar-room and found a crowd of people in it, and saw the defendant at the lower end of the counter with a revolver in his hands, and defendant said to witness that he had a paper to search the latter's house, and also said: "Give me the cigarettes you have," to which last remark witness replied: "You know as well as I do where they are:" and then defendant told witness to go up stairs and get them, and witness told defendant to go up and get them himself. Witness says that Mr. Monne, whom he then went after to read the paper for him, witness not knowing what

right defendant had to search his house, told him it was a warrant. That defendant went up stairs and took a valise and trunk and box of cigars that were all worm eaten, and took them out in the street and remained there watching them, and Mr. Monne and witness took the street car and went to "Mr. Gunby's house—the custom house." That this valise was left at witness' bar-room during the night of the preceding Monday, on which day defendant had left witness' employ, some one having brought it in and said: "Keep that valise; it belongs to Claudio." That on Tuesday defendant came to settle his account, and on Wednesday he came again, and witness said to him: "The valise is there," and defendant replied: "Never mind; leave it there." That witness took the valise up stairs into that room. That witness had not opened it to see its contents at any time before its seizure; that they opened it after Claudio had seized it, when Claudio himself was there, that witness opened it himself, and that it was fastened with a strap only; that it contained cigars, but was not full; doesn't know how much. That on the Wednesday referred to, between ten and eleven o'clock, witness and defendant were out on the front porch and defendant said to him that he knew witness was going to buy that bar-room to harm defendant, and witness replied that he did not want to harm him, did not want the bar-room, and why didn't he buy it; and defendant responded that witness was the man who was always anxious to do

harm to every one, and was taking away his living, and that defendant would make witness spend all he had, and witness answered: "Well, well, well." That the bar-room referred to was one in charge of Lorenzo Garcia.

On the *cross-examination*, the witness in reply to the question, if he did not after the cigars and cigarettes had been seized, go to the custom house with Mr. Monne and others, replied: Claudio Ortiz took the cigars and put them on the train, and we all went to the custom house. That there were cigars in the trunk and box. That witness was at the custom house with Mr. Monne at the time defendant delivered the valise and trunk and box with the cigars in them. That the valise with the cigarettes in it was present at the custom house with witness and custom house officers. At this juncture the question in point was asked, and objected to on the grounds and with the result indicated at the outset of the next preceding paragraph.

The position of the prisoner's counsel in support of the rejected question is, that the witness had testified, in his direct examination, that the defendant had seized a valise and trunk belonging to himself, and which he had left in witness' place of business, and had carried them to the custom house filled with cigars and cigarettes, claiming that witness had smuggled them. That the evident object of the witness was to convince the jury that the defendant had

been guilty of a conspiracy to make trouble for him with the customs officials, and thus create a prejudice against him in the juror's minds. And he argues that it was certainly legitimate on the cross-examination to show by the witness that he, at the time, made no claim to the officials that the alleged contraband articles, or the valise, or trunk in which they were contained, were the property of the defendant.

It is necessary to observe that the testimony of this witness shows that the pistol shot which resulted in the death of Serra was fired at the witness, and it is so charged in the indictment in the usual words of indictments for murder in the first degree. Serra was standing on the veranda of the Havanna hotel in Ybor City, and behind Ysern, the witness, but facing the defendant, the last two persons being on the ground in the hotel yard, near the veranda. The apparent purpose of the State in introducing the evidence detailed in the preceding paragraphs, as well as other testimony not necessary to be noticed now, was to show the animus of the defendant towards Ysern; that in making this seizure the defendant was executing his threats to make the witness spend all he had, to which end defendant had seized under a warrant and on the premises of the witness the stated articles as being liable to seizure under the customs laws of the general government. The object of the question in point being, as claimed by the prisoner's counsel, to show that the witness made no claim to the customs officials at

the time and place referred to in the question, it is entirely certain that no harm has been done the defendant. In the absence of proof that anything of the kind was said, the sole inference necessarily is, that nothing of the kind was said; no other inference could have been drawn by the jury. The question, as it was framed, called for an answer as to whether anything was or was not said, and the understanding of the counsel for the State evidently was that the defendant's purpose was to lay the basis for impeaching the witness, and the trial judge ruled upon the question not as one apparently calling for a mere statement that the witness had not said anything on the subject, but as involving or looking to a statement by the witness of what, if anything, he had said; and the reason for his ruling may have been that any such statement was calculated to prejudice the defendant and improper to go before the jury. It is furthermore a fact that the witness had not asserted in his direct examination that the goods were the defendant's property, but had merely stated circumstances tending to show that they were. As the matter is now presented to us, we are asked to send the case back for the purpose of permitting the prisoner to prove that something was not said which is not only not shown to have been said, but which he admits was not said, and which the jury in their deliberations were bound to assume was not said. Of course the purpose of counsel upon the trial was the same as it is here. A mere statement that witness did not make any such assertion at the

time and place referred to, will not tend to show any malice, feeling or bias against the defendant, nor can it in any wise affect the witness' credibility, or tend to modify, limit, explain, overthrow or break the force of the witness' evidence. Though no authority is cited in support of or against the assignment of error, we have examined the text books to find ground justifying our interposition, but without success. 1 Greenleaf on Evidence, sections 445, 450; 1 Rice on Evidence, 582-90.

II. The second assignment of error is based upon the exclusion of a photograph of the Havana hotel, which the defendant offered as evidence.

The whole picture, as represented by the photograph offered, is nine and three-eighth inches wide, by seven and five-eighths inches high. There is no measurement of distances indicated upon it. It was taken at a point in the street north-easterly from the building, so as to represent the east and north sides of the hotel, but does not show all of the north side. It represents no space between the limbs of a tree in the street which the house fronted on, and the roof or north side of the building, whereas, according to the artist who took it, it would have shown considerable space there if the picture had been taken from the front or east side of the building. He also states that the tree would not have shown if the camera had been placed in front of the house. The artist says it was taken as it was to show both the tree and hotel, under Mr.

Gunby's directions; that he was instructed to take a view from a point to show the tree and hotel best, and did so under these instructions, but no attorney accompanied him. The object of the photograph, as declared by defendant's counsel on the trial, was to show a perspective view of the front of the hotel and where Serra was killed.

There had already been introduced in evidence by the State a diagram representing the south half of the block on which the hotel stood, and the streets east, south and west of it, and the alley running through the block east and west and dividing it in half, and the north half of the block, such north half being represented, however, in reduced dimensions from north to south, or rather from the alley to the street north of the block, which is also misrepresented. It also represents the floor plan of the hotel, which hotel was on the southeast corner of the lot, and faced east, including the verandas, and the yard north of the hotel where defendant and Ysern were when the shooting took place, the exit from the veranda to the yard, and from the yard to the street on the east, and the fence on the east side of the yard; and gives, as testified by the draftsman, the exact distances of the "hotel and immediate surroundings."

The admissibility of a map or diagram or picture, proved to be a correct representation of the physical objects as to which testimony is offered or to the extent that it is so proved, for the use of witnesses in

explaining their testimony and to enable the jury to understand the case more perfectly, whether such map, diagram or picture be made solely by the hand of man, or through the agency of photography, is affirmed in Adams vs. State 28 Fla., 511, 10 South Rep., 106, and authorities there cited. See also Rice on Evidence, vol. 2, chapter 52. Conceding that counsel's purpose was to use the photograph not as independent evidence, but for auxiliary purposes indicated above, or, in other words, in connection with other evidence to enable the jury to understand and apply it, still we are satisfied that no error was committed by the judge in excluding this picture. Whether or not these pictures are proved to be true representations, are questions to be decided at least primarily by the trial judge; Blair vs. Pelham, 118 Mass., 420; and it is certainly not shown that he has erred in this case. The misrepresentation as to the tree affects the very spot of the homicide, bringing the limbs of the tree against the house or veranda, right where it occurred. We are moreover entirely satisfied that this picture could have been of no assistance to the jury in the case, but would have served rather as an agency of confusion. The correctness of the diagram introduced by the State, as explained by the draftsman, is undisputed, and afforded as full aid as could be deemed necessary to a clear understanding of the oral testimony. The ruling was correct.

III. The third, fourth and fifth assignments of error, are, in substance, as follows:

3d. That the court erred in not sustaining defendant's objection to the testimony of E. Silver, a witness for the State;

4th. That it erred in overruling defendant's motion to exclude from the jury that portion of Silver's testimony which referred to the conversation with the "collector" in and about the cigars;

5th. That it erred in overruling defendant's motion to exclude from the jury the testimony of Silver in which he swears to seeing defendant and Francisco Ysern on that night.

After the defendant had closed his testimony, the State introduced as a witness E. Silver, and asked him if he saw the defendant on the night of the homicide in question, which nights the witness had previously stated he remembered. To this question defendant's counsel objected on the ground that it was not in rebuttal of anything brought out by the defendant, and the court having overruled the objection, and exception to the ruling having been noted, the witness answered "Yes, sir," and the attorneys of the State then proceeded to interrogate him, and he testified, in substance, that he saw defendant that night after dark when defendant went to Ysern's, at the corner of Sixth avenue and Fourteenth street, that defendant was speaking to a colored man, there being

two colored men there, and defendant being between them going across the street, and witness heard him say: "If that fellow across the street has any smuggled 'goods, tell him to hide them away; I don't want to see them." The witness was then asked by the State if he saw the defendant again that night. The recital of the bill of exceptions at this point is as follows: "Counsel for defendant objects on same ground as last objection." The witness then answered the question, and questioning and answering continued; he stating in effect that he saw defendant near the hotel about a minute before the shooting, and that he also saw Ysern on the last occasion not farther than forty or fifty· feet behind defendant, and that this was between half past seven and eight o'clock. At the close of witness' examination in chief, there was a motion made by defendant's counsel to exclude that portion of the witness' testimony referring to the conversation with the colored man about cigars, because it was not material, nor in rebuttal, and because it tended to prejudice the defendant in the minds of the jury. This motion having been denied, the defendant's counsel excepted, and then moved to "exclude all the testimony except that which is in rebuttal, the testimony of the witness, in which he swears to seeing Claudio Ortiz and Francisco Ysern on that night, on the south side of Seventh avenue, because it is not in rebuttal of any testimony offered."

The first of the above questions was simply prelimi-
nary in its character, and does not seem improper in
itself, even assuming that the answer presents matter
not in rebuttal of defendant's testimony; and not only
is the same true of the second question, but no ruling
upon it appears either to have been made or to have
been insisted on, and hence, for aught that is shown
to us, it may have been waived or abandoned. Pom-
eroy's Lessee vs. Bank of Indiana, 1 Wall., 592 ;
Laber vs. Cooper, 7 Wall., 565; Locke vs. United
States, 2 Clif., 574; Willingham vs. State, 21 Fla.,
761; 2 Rice on Evidence, sec. 358. However, where a
question is not improper in itself, but the answer pre-
sents evidence which is illegal and objectionable on
any known ground, the proper practice is a motion to
strike it out, and have the jury directed not to con-
sider it, the movant specifying his objections with like
particularity as in objecting to questions. B. & O.
R. R. Co. vs. Shipley, 39 Md., 251; Sill vs. Reese, 47
Cal., 294, 341; J. T. & K. W. Ry. Co. vs. P. L., T. &
M. Co., 27 Fla., 1, 157, 9 South. Rep., 661 ; Seeley vs.
Engell, 13 N. Y., 542, 547; Miller vs. Montgomery,
78 N. Y., 282, 286; Comes vs. Chicago, M. & St. P.
Ry. Co., 78 N. Y., 391; 2 Rice on Evidence, section
357; State vs. Myers, 99 Mo., 107.

In view of the motions to strike out we will consider
the objections made to the testimony. The action of
a trial court in permitting the State, or other plain-

tiff, after it has closed its testimony in chief, and the defendant has put in his testimony, to introduce evidence which is not in rebuttal of that of the defendant, will not be interfered with by any appellate court, unless it should appear that injustice has been done to the defendant by such action. As was said in considering a similar objection in Burroughs vs. State, 17 Fla., 643, 647, a criminal cause, it must be a strong case showing that injustice has been done the party, and that a sound discretion has not been exercised, which would induce this court to interfere to disturb the judgment of the Circuit Court by revising the exercise of that discretion with which they are entrusted in regard to the relaxation of the rules of evidence; and it is not error unless the witness has been kept back by a trick, or the opposite party has been deceived or injuriously affected; there must be a manifest abuse of discretion. See also Freeleigh vs. State, 8 Mo., 606; People vs. Mather, 4 Wend., 229; J. T. & K. W. Ry. Co. vs. P. L. ,T. & M. Co., 27 Fla., 1, 157, 9 South. Rep., 661; Thompson on Trials, 343, 347. If we admit that the testimony complained of is not in rebuttal of that introduced by the defendant, but merely cumulative to that previously introduced by the State, it is still an entirely sufficient answer to the objection that there is no attempt to show, nor even a pretense, that the defendant was injured, or placed in any unfair position, or has suffered any disadvantage, from the mere fact of this witness having testified af-

ter the defendant had closed his case. Until the defendant can point to some result of this character, he can not be heard to invoke our interposition. He has not pointed to or suggested any, and certainly none of the kind has occurred to us in our consideration of the testimony.

The contention that the defendant's conversation with the colored man about the cigars should have been excluded, in so far as such contention is based on the grounds of the immateriality of such testimony, and of its tending to prejudice the defendant in the minds of the jury, is not tenable. In Kerr's Law of Homicide, sec. 406, it is said that all acts and conduct of the accused tending to shed light upon the transaction or to furnish a key for a motive to the homicide, are admissible in evidence; and (sec. 429) where declarations of the defendant tend to show a motive for committing the homicide, or malice in its commission, they may be proved by the prosecution; see also sec. 476. In Wharton's Criminal Evidence, sec. 784, it is observed that it is also relevant to inquire whether the party charged was on bad terms with the party injured. As indicated in a former part of this opinion, the purpose of the State in introducing the evidence as to the seizure of the cigars in the building of Ysern, was to show the animus or malice of the defendant against Ysern, for whom we have seen the fatal shot was intended. The fact that the defendant was seen by Silver at the time indicated, about dark, so near

the place of the homicide, about the south-west corner of the square south of that on which the homicide occurred, can not be deemed irrelevant to the issues in this case; nor can the remark made by him at that time. It is argued by defendant's counsel that it was not only irrelevant and immaterial to the issue, but when viewed in the light of the fact that defendant was on that night acting as a special deputy of the collector of customs, with a warrant to search for and seize contraband articles, its tendency to prejudice his cause with the jury will be apparent. The mere tendency of testimony to prejudice a defendant's cause with the jury is, of course, not ground for its exclusion; where testimony is both irrelevant to the case and calculated to prejudice the defendant in the minds of the jurors, it should not be admitted, and its admission may be ground for a new trial. This remark was made after the seizure of the articles on Ysern's premises, and we think it tended to illustrate the degree of the defendant's animus towards Ysern in making the seizure on his premises, in that it showed that he was not acting impartially under the power vested in him by the warrant referred to, but was disposed to shield others who might have cigars which were the subject of seizure. His acts and doings, immediately preceding the homicide, were admissible as such, and the remark was admissible also as indicating his feeling or animus against Ysern, for whom the pistol shot was intended. Kernan vs. State, 65 Md.,

274 SUPREME COURT.

253; Wharton's Crim. Ev., sections 23, 24, 28-32; People vs. Potter, 5 Mich., 1; Evans vs. State, 62 Ala., 6; Morrison vs. State, 84 Ala., 405. The testimony was relevant and admissible; its weight was a question for the jury.

IV. The sixth assignment of error is, that the court erred in admitting the statement which the accused had made on an application previously made by him for bail.

On the trial the defendant made a statement under oath of his defense. After this the State was permitted to prove by a stenographer certain things which the defendant had said in a former statement made before the Circuit Judge in a proceeding for *habeas corpus* for release on bail.

The *argument* of counsel for plaintiff in error is, that before evidence of the former statements of a witness can be introduced for the purpose of contradicting him, his mind must be particularly directed to the time, place and circumstances of his making the same, in order to afford him an opportunity of explanation, and that if a defendant on trial for crime is, under the statute which allows him to make "a statement to the jury under oath of the matter of his or her defense," (sec. 30, p. 519 McClellan's Digest, sec. 2908 R. S.), a witness, no such predicate for his impeachment was laid in this case ; or, on the other hand, if he is not a witness, which it is urged he is not, his statement under the statute is not subject to be impeached and contradicted like the testimony of a

witness, and that the admission of the testimony for such purpose was improper; that it is true the confessions or admissions of a defendant may be introduced against him as such, but it would require a very strange construction of the law to subject a defendant to the attacks which may be made on a witness without throwing around him the same safeguards the law clothes a witness with; that his attention can not be directed to former statements, so as to afford him an opportunity of admitting, denying or explaining them, and therefore it is impossible to afford the defendant the protection which the law affords an ordinary witness, and hence to permit such impeachment would be a perversion of justice, to say nothing of the rules of evidence.

Mr. Greenleaf says that after a witness had been examined in chief, his *credit may be impeached* in various modes, besides that of exhibiting the improbabilities of a story by cross-examination: (1) By disproving the facts stated by him by the testimony of other witnesses. (2) By general evidence affecting his credit for veracity. (3) By proof of contrary statements. 1 Greenleaf on Evidence, section 3,461,462. But he says before statements contrary to what has been testified on the trial can be proved it is necessary, when the former statements were verbal, to ask the witness as to the time, place and person involved in the supposed contradiction, sec. 462; 1 Rice on Evidence, 616, 617; Newton vs. State, 21 Fla., 53. This course of proceeding is considered indispensable from a sense of justice to the witness, for as the direct ten-

dency of the evidence is to impeach his veracity, it is due to him that by first calling his attention to the subject, he should have an opportunity to recollect the facts, and if necessary to explain the nature, meaning and design of what he may have said elsewhere. *Ibid*, and State vs. Reed, 62 Me., 147. A somewhat similar principle also governs the cross-examination of a witness as to the contents of a paper written by him ; and consequently a question purporting to embody the contents of a letter, and asking a witness if he has written a letter with such or like contents to any person, is not permitted. The witness must be shown the letter and asked if he wrote it. The letter is of course the evidence of its contents, and even if he admits it to be his writing, he can not be asked whether statements such as counsel may suggest are contained in it, but the whole letter must be read as the only competent evidence of that fact. In Gunter vs. State, 88 Ala., 96, it was decided that where the testimony of a witness on the preliminary examination of the defendant before a committing magistrate was reduced to writing and subscribed by him, and the deposition is in court on the trial, the witness can not be cross-examined as to the statement then made by him without allowing him to hear or read the deposition ; and further, that the rule is the same whether the purpose of the cross-examination is to impeach him, to test the accuracy of his recollection or to refresh his memory. See also Floyd vs. State, 82 Ala., 16 ; Gaffney vs. People, 50 N. Y., 416 ; The Queen's Case, 2 B. & B., 287 ;

People vs. Donovan, 43 Cal., 162. The case before us does not involve any of these writings.

If our statute, the terms of which are given above, gave an accused person when availing himself of its provisions, the status of a witness, as do the statutes of most of the States, it is clear, both in reason and upon the authority of numerous decisions, (Wharton's Cr. Ev., 427–432) that his credit as a witness might be impeached in the manner indicated. That he is not given such status is settled by our own decisions. Miller vs. State, 15 Fla., 577 ; Bond vs. State, 21 Fla., 738 ; Andrews vs. State, *Ibid,*598 ; Hawkins vs. State, 29 Fla., 554, 10 South. Rep., 822. In the last of these cases we said : "In construing this statute this court in Miller vs. State, very properly held that the making of such statement under oath did not constitute the prisoner a witness, nor subject him to the rules applicable to witnesses, nor make him liable to cross-examination, but is simply a presentation verbally in his own language and manner of the matters pertaining to his defense. In Bond vs. State it is further held that by this statute the prisoner is given an opportunity of stating whatever he may desire bearing upon his case. He may omit what he pleases, may tell what he deems beneficial, and should he withhold anything, it can not be drawn from him by cross-examination, no matter what its character or effect may be. He can not be made to testify against himself, as is allowed in some States where he voluntarily offers himself as a witness. With this construction of the statute we still fully agree." And the same opinion, ad-

dressing itself to the facts of the case then before the court, further observes: "When this defendant while making his statement was interrogated by a juror as to whether he could write, the court *sua sponte* should have promptly stopped it, and should have seen to it that the prisoner was not interfered with while making his statement, either by questions or suggestions from the jury, the State's counsel, his own counsel, or any one else."

The theory and spirit of our statute, as it has been construed and appears to us, do not permit proof of prior contrary statements for the mere purpose of impeaching the credit of a defendant *as a witness*, nor any impeachment of his veracity or of his reputation for truth and veracity, *as a witness*. If they did, the reasons of the rule of practice announced above—protection against discredit—would be as applicable and essential to a defendant as it is to an ordinary witness. As no cross-questions can be put to the defendant while making his statement, of course the rule can not be followed. As the law-makers in authorizing the defendant in a criminal trial to make a statement of his defense, saw fit to exempt him from examination, from all questions and cross-questions, they, viewed in the light of ordinary reason, must be held to have intended to relieve him from any attack to which by the known rules of evidence a cross-examination or cautionary suggestions were an essential prerequisite. None of the consequences following from this view can be held to have escaped the attention of the Legislature, and certainly the particular result made promi-

nent by the case in hand involves one of the most or-
dinary and well-known rules regulating the examina-
tion of witnesses. Neither it nor any consequence
which may logically flow from the exemption from
being questioned can be more anomalous than is the
exemption itself.

The above views are not without support. In Ala-
bama, an act of December 2nd, 1882, provided that in
all criminal trials it should "be competent for the de-
fendants to make a statement as to the facts in their
own behalf, but not under oath," and in the case of
Chappel vs. State, 71 Ala., 322, it was held that the
accused could not be examined by his counsel or cross-
examined by the State when making such a statement;
and, further, that while the statement may be sub-
jected to all the tests which spring out of the proof in
the cause, the consistency or probability *vel non* of the
statements made, the ⸢defendants' manner in making
the statements and the interest they must feel in the
results, they can not be impeached as witnesses are by
proof of bad character, by cross-examination, nor by
any other proof of extrinsic facts introduced for such
purpose. The same court held in Whizenant vs. State,
*Ibid*, 383, that cross-examination was reversible error.
By an act of February 17th, 1885, it was enacted that
a person on trial under indictment, complaint or other
criminal proceeding, shall at his own request, but not
otherwise, "be a competent witness," and under this
act it was decided he became subject to examination
and cross-examination as any other witness; Harris vs.
State, 78 Ala., 482. In Georgia the prisoner has the

right to make such statement as he or she may deem proper in his or her defense, such statement not to be under oath, and to have such force only as the jury may think right to give it, and the prisoner is not to be compelled to answer any questions on cross-examination should he think proper to decline to answer; (Georgia Code, 1873, sec. 4637) and the jury may believe such statement in preference to the sworn testimony in the case. Code of 1882, sec. 4637. In Doyle vs. State, 77 Ga., 513, (A. D. 1880) it was decided that where the defendant exercises this right, his statement may be contradicted by testimony as to the facts it narrates, but the making of the statement does not alone authorize the introduction of testimony of the general bad character of the defendant, and that the witness testifying concerning it would not believe him on oath. "The mode of impeachment here adopted," said Justice Hall, speaking for the court, "applies only to witnesses, but does not apply to a party unless, in a civil cause or a criminal prosecution, he first puts his character in issue; such testimony is never resorted to, in the first instance, for purposes of conviction, but to shield from punishment, especially in a doubtful case. This is a familiar principle and needs no citation to authorize its support."

Though a defendant when making his statement is not a witness in the sense of being liable to impeachment where an ordinary witness could not be impeached without cautionary suggestions of the character explained, still he is a defendant, just the same as

he was before the statute was enacted, and his statements made under the act are, in our judgment, subject to the same attacks and tests which any voluntary statements made by a defendant were subject to prior to the statute. Prior to the statute it was always competent for the State to show the defendant's falsehoods and his contradictions of himself as to the alleged offense and its circumstances *as acts evincing guilt.* 1 Bishops's Crim. Pro., (3d ed.), secs. 1,249, 1252; Cathcart vs. Commonwealth, 37 Penn. St., 108. In Smith vs. State, 29 Fla., 408, 10 South. Rep, 894, the accused had stated to a school board, prior to the trial, that he gave a certain school order, which had been changed, to one Mrs. Morrison, and had no more to do with it, and was not guilty. Mrs. Morrison was permitted to testify that he did not give her the order, and it was held that there was no error in permitting her to do so. And in State vs. Wentworth, 37 N. H., 196, where a prisoner had stated that he was in company with an individual on the evening of the commission of the offense, and went to a place where he said the individual resided, and did business with him there, it was even held that unsuccessful attempts made on the next day to ascertain if there was any such individual, by going to the place stated and making inquiries of persons residing there, was competent; and in Walker vs. State, 49 Ala., 398, it was decided that when a person who is suspected of or charged with a criminal offense gives a false explana-

tion of any suspicious fact or circumstance tending to connect him with the offense, it is regarded as a criminative circumstance proper to be submitted to the jury; and in State vs. Clark, 4 Strobh. (Law), 311, where it was permitted to be shown that the denial of the defendant that he had been near the place of the theft or had ever seen the stolen goods, was untrue; and State vs. Benner, 64 Me., 267, where the doctrine announced is, that the utterance of falsehood by the prisoner by way of exculpation, the falsehood being established by satisfactory proof, is universally recognized as circumstantial evidence tending to establish his guilt, the exculpatory force of which is to be determined by the jury; and State vs. Gillis, 4 Dev., (Law), 606, where, upon the trial of an indictment for arson, the evidence was that the prisoner had in his possession bank notes similar to some stolen from the house, when the arson was committed, and that he gave contradictory accounts of the mode in which he obtained them, an instruction to the jury that these circumstances were evidence to prove that he did not come honestly by them, was held erroneous; and that such declarations tend to prove the guilt of the prisoner. See also Commonwealth vs. Grose, 99 Mass., 423; Sheffield vs. State, 43 Texas, 378; Tomkins vs. State, 17 Ga., 356; Adams vs. State, 52 Ala., 379. These decisions in no wise conflict with our conclusion against the admissibility of testimony for his impeachment as

a witness.  They deal with him as defendant, which he still is, and not as an ordinary witness, which he is not.

As prior to the statute, evidence of this kind was admissible, not however to impeach his credit as a witness, but to prove his guilt as an accused defendant, and without any question or suggestions to him, so now when a statement made under the statute is contradictory of any former voluntary statement, such former statement whether made in or out of court, is admissible, the same as any other voluntary statement was before, without any cautionary questions or suggestions.  Statements made by him under the new or increased privilege of making a statement as a defendant, are to be regarded as subject to the same attacks, and admissible for the same purpose that former statements as a defendant were, and when they are contradictory they are no less suggestive of guilt.  A statement made under this act, though made under oath, is to be regarded as entirely voluntary, unless there is proof of circumstances refuting this presumption.  When he offers himself to be sworn, for the purpose contemplated by the statute, the presumption, in the absence of proof to the contrary, is that he does so in the free exercise of the privilege which the law gives him, and with full appreciation of the consequences to him of contradicting any former statement which he may have made of a judicial or extra-judicial character, or of otherwise subjecting himself

to the same attack which any voluntary statement made by him before the statute would have been subject to, but he does not become a witness, or subject to the attacks and modes of attack to which witnesses alone are subject and were subject prior to the statute.

If the previous statement of a defendant was not admissible for any purpose, we should feel bound under the objections shown to have been made, *and followed by rulings thereon duly excepted to*, to overrule the action of the Circuit Court; (Mulqueen vs. Duffy, 6 Hun., 299; Dow vs. Merrill, 65 N. H., 107; Smiley vs. Pearce, 98 N. C., 185; Tozer vs. New York Central & H. R. R. Co., 105 N. Y., 659; State vs. Myers, 99 Mo., 107; 2 Rice on Evidence, 920) and in the inquiry as to its admissibility for any purpose we have consented to discuss the question presented in the argument of counsel, but the fact nevertheless is that it does not appear from the bill of exceptions that the trial judge has ever ruled upon the specific objection which has been urged before us, nor is it admitted by the State that he did so; nor does it appear that what was proved of the former statement was either offered, admitted or used for any purpose inconsistent with the views expressed by us above, or that the trial judge ever ruled that a former statement or anything said in making it was admissible for the object excluded by this opinion. The special objection to "anything impeaching or contradicting the statement of the defendant by the use of a former statement made by him,"

was not ruled upon, and under the circumstances must be regarded by us as having been abandoned or waived in the trial court. Pomeroy's Lessee vs. Bank of Indianna, 1 Wall., 592; Laber vs. Cooper, 7 Wall., 565; Insurance Company vs. Sea, 21 Wall., 158; Mutual Life Insurance Co. vs. Snyder, 3 Otto, 393; 2 Rice on Evidence, 358; Burns vs. People, 126 Ill., 282; Willingham vs. State, 21 Fla., 761; Coker vs. Hayes, 16 Fla., 368; Robinson vs. Hartridge, 13 Fla., 501. A former statement being admissible for the purpose indicated, it must, in the absence of an affirmative showing to the contrary, be assumed that the admission of it was for a legal, and not for a prohibited pur pose. Where testimony, admissible in a cause for one purpose, is objected to on grounds for which it would not be admissible, the mere overruling of such objection is evidence that the grounds stated were held not to be a sufficient objection to its admission in that case, but is not of itself evidence that the testimony was admitted for the illegal purpose; there must be something which shows that the testimony was offered, or admitted, or used for that purpose. Should it be offered and admitted for a lawful purpose, and afterwards attempted to be used for one not permissible, it would seem that objection should be made thereto at the time of such attempt. Kelly vs. Jackson, 6 Peters, 622; Taylor vs. Deverell, 43 Kansas, 469; Huffman vs. State, 28 Texas Ct. Ap., 128; Hennesy vs. State, 23 *Ibid*, 340. There is nothing here to indicate

that any unlawful use of it was attempted on the trial. The same presumptions obtains in favor of the correctness of the action of the lower court in this matter as in all matters *in pais*.

No other point is made by counsel for the defendant. Of course we express no opinion on the other objections taken and abandoned, or those ruled against the State. They are not before us.

V. The seventh assignment of error. is, that the court erred in denying the defendant's motion for a new trial. The submission of this point by counsel is, that they think that a careful review and comparison of the testimony warrant them in claiming that the jury failed to give the accused the benefit of all the reasonable doubt cast by that testimony upon the presence of the defendant at the scene of the killing. It is sufficient to say in reply to this that we have considered carefully the large volume of testimony, and have failed to find any ground for an interference by an appellate court with the conclusion of the jury.

The judgment is affirmed.